DETROIT POLICE OFFICERS ASSOCIATION v CITY OF DETROIT

Docket No. 75591. Argued November 13, 1986 (Calendar No. 7).
   Decided April 20, 1987. Rehearing denied *post*, 1219.

   The Detroit Police Officers Association brought an unfair labor
      practice charge before the Employment Relations Commission
      against the City of Detroit, alleging that the city violated
      § 10(1)(e) of the public employment relations act by refusing to
      bargain with regard to its decision to replace police officers
      with private guards to provide court security following the
      reorganization of the Detroit Recorder's Court and the creation
      of the 36th District Court. The hearing referee found no unlaw-
      ful refusal to bargain. The MERC reversed, ordering the city to
      bargain. The Court of Appeals, D. E. HOLBROOK, JR., P.J., and
      MACKENZIE and QUINNELL, JJ., affirmed (Docket No. 70799).
      The city appeals.

   The judgment of the Court of Appeals was affirmed by equal
      division.

   Justice BOYLE, joined by Justices BRICKLEY and CAVANAGH,
      stated that the City of Detroit violated its duty under the
      public employment relations act to bargain in good faith con-
      cerning its decision to subcontract court security work in the
      traffic and ordinance division and the misdemeanor and exami-
      nation division of the 36th District Court transferred from the
      Detroit Recorder's Court; the work constituted bargaining unit
      work.

   1. As part of the reorganization of the Wayne County and
      Detroit courts under 1980 PA 438, the Recorder's Court traffic
      and ordinance division and the misdemeanor and examination
      departments of the court's felony division were transferred to
      the 36th District Court. Prior to reorganization, security for
      these functions was provided by members of the DPOA. While
      the legislative history of the act indicates a clear intent to
      afford limited protection to DPOA members, the method of
      providing courtroom security in the 36th District Court is left
      within the discretion of the district control unit.

   2. The public employment relations act requires public em-
      ployers to bargain collectively with the representatives of its
      employees with respect to wages, hours, and other terms and
      conditions of employment, including a decision by an employer

to terminate its employees and to hire a subcontractor to perform the same work. An employer's unilateral decision to transfer bargaining unit work outside the unit has been held by the MERC to be an unfair labor practice under the PERA.

3. In this case, the findings of the MERC that the work of providing courtroom security for the traffic and ordinance and misdemeanor and examination functions of the 36th District Court is bargaining unit work are supported by competent, material, and substantial evidence on the record considered as a whole. The identity of the work was not destroyed when it was transferred from the Recorder's Court. Because it was bargaining unit work, the city had a duty to bargain with regard to its decision to subcontract the work.

Justice ARCHER, joined by Justice LEVIN, stated that 1980 PA 438, in effect, abolished the Detroit Recorder's Court as a separate independent entity and, thus, eliminated the City of Detroit's duty to bargain over the subcontracting of bargaining unit work. Thereafter, the city had no obligation to continue the arrangement it had with the Recorder's Court for providing security personnel with the entirely new and different entity. The former bargaining unit work no longer existed through no action of the city. Had the Legislature intended the former security practices in the Detroit Recorder's Court to continue in the 36th District Court, it could have so specified.

Chief Justice RILEY stated that the absence of an affirmative requirement in 1980 PA 438 that the City of Detroit bargain with the DPOA regarding provision of court security in the traffic and ordinance division of the 36th District Court did not relieve the city of the duty to bargain; under the PERA the city had a duty to bargain prior to effecting a change that would result in the removal of bargaining unit work. That duty was extinguished, however, by the 1980 PA 438 elimination of the bargaining unit work in the Detroit Recorder's Court.

Affirmed by equal division.

Justice GRIFFIN took no part in the decision of this case.

137 Mich App 87; 357 NW2d 816 (1984) affirmed.

*Gregory, Van Lopik, Moore & Jeakle* (by *James M. Moore*) for the plaintiff.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *John C. O'Meara* and *Richard L. Caretti*) for the defendant.

BOYLE, J. Appellee Detroit Police Officers Association filed an unfair labor practice charge against appellant City of Detroit with the Michigan Employment Relations Commission, alleging that the city violated § 10(1)(e) of the public employment relations act, MCL 423.210(1)(e); MSA 17.455(10)(1)(e), by refusing to bargain over the removal of jobs from the DPOA's bargaining unit. The MERC's order in favor of the DPOA was affirmed by the Court of Appeals. 137 Mich App 87; 357 NW2d 816 (1984). We would likewise affirm.

I

FACTS

The material facts, as stipulated to by the parties, are set forth in the opinion of the Court of Appeals:

Prior to September 1, 1981, court security for the traffic and ordinance division, as well as for the misdemeanor and examination functions of the felony division, of the Recorder's Court of Detroit was provided by 44 police officers represented by the DPOA. Pursuant to the court reorganization mandated by 1980 PA 438, effective September 1, 1981, the 36th District Court was created, to which was transferred the traffic and ordinance and the misdemeanor and examination functions previously performed by the Recorder's Court.[1] Regarding court security at the newly reorganized Recorder's Court, MCL 600.1417; MSA 27A.1417 provides in pertinent part as follows:

"[T]he county of Wayne and the city of Detroit shall enter into a contract . . . which shall pro-

---

[1] The new 36th District Court also encompasses the functions of the Court of Common Pleas. This included landlord-tenant cases and civil actions. Before the reorganization, the Wayne County Sheriff supplied seven deputies to provide courtroom security at the Court of Common Pleas.

vide that the city of Detroit provide courtroom security in the recorder's court in the city of Detroit only until September 30, 1983, or until all of the officers now assigned to the recorder's court felony division have been transferred to other court duty, have elected to transfer to other duty, or have terminated their police service, whichever occurs first."

In accordance with the above, the city temporarily reassigned 18 of the 44 police officers to court security jobs at the Recorder's Court. The city's temporary assignment of these 18 police officers is not at issue in this case and, contrary to the city's assertion on appeal, was not addressed in MERC's decision and order.

Regarding court security at the newly created 36th District Court, 1980 PA 438 added the following statutory provision:

"In the thirty-sixth district, the district control unit shall be responsible for maintaining court security. Persons providing security services shall be assigned subject to the approval of the chief judge of the thirty-sixth district and, when performing services in the courtroom, shall be subject to the control of the judge holding court." MCL 600.8283; MSA 27A.8283.

The City of Detroit is the "district control unit" for the 36th District Court. MCL 600.8103(3); MSA 27A.8103(3); MCL 600.8104(1)(b); MSA 27A.8104(1)(b). Pursuant to the foregoing, the city unilaterally decided to contract with a private guard agency for the provision of court security services at the 36th District Court. Consequently, the remaining 26 police officers who formerly provided court security for the Recorder's Court functions transferred to the 36th District Court were assigned to other non-court security bargaining unit jobs. While the city indicated its willingness to bargain over the impact of its decision to contract out the court security work at the 36th District Court, it refused to bargain over the decision itself, giving rise to the DPOA's filing of an unfair labor practice charge. [137 Mich App 89-91.]

The hearing referee found that there was no
unlawful refusal to bargain because the court
security work previously performed by the DPOA at
the Recorder's Court was eliminated by the Legis-
lature by virtue of 1980 PA 438, not by decision of
the City of Detroit. The hearing referee found that
the Legislature intended to eliminate courtroom
security work at the newly created 36th District
Court from the DPOA bargaining unit. Therefore,
the hearing referee found no duty to bargain over
the decision to utilize contract labor to supply
courtroom security at the 36th District Court.

A two-member majority of the MERC reversed
the decision of the referee, disagreeing with the
factual findings and statutory interpretation:

> We find that the record in this case does not
> support the [referee's] conclusion that the work of
> providing security for the traffic and ordinance
> and misdemeanor and examination functions of
> 36th District Court is not bargaining unit [work]
> because these functions are no longer performed
> as part of Detroit Recorder's Court. Insofar as the
> record discloses, it appears that these functions
> were transferred more or less intact from the
> former Detroit Recorder's Court to the new 36th
> District Court. It also appears that positions which
> are substantially identical to those once filled by
> bargaining unit members continue to exist and are
> now being filled by employees of the private con-
> tractor, albeit under different employment terms.
> We find in these circumstances that the transfer of
> the Detroit Recorder's Court misdemeanor and
> examination and traffic and ordinance functions to
> the new court was akin to an administrative reor-
> ganization which did not destroy the identity of
> the work of providing security for these
> functions. . . .
> We also cannot agree with the [referee's] inter-
> pretation of the Court Reorganization Act on this
> matter. We note that Section 1417 of that statute,

which explicitly protects security personnel from the Felony Division of the old Recorder's Court from involuntary transfer to noncourt assignments prior to 1983, makes reference to transfers to "other court duty." This suggests that the legislature anticipated that Respondent would be continuing to provide some courtroom security with its own employees. This aside, however, the Court Reorganization Act is silent on the specific question presented by this case. We think it improper to infer from the legislature's silence that they intended to permit Respondent to free itself of its obligation to bargain over work long recognized as part of Charging Party's bargaining unit. Had they intended this result, of course, they could have so provided.

The MERC then held:

[T]he work of providing courtroom security for the traffic and ordinance and misdemeanor and examination functions of 36th District Court is bargaining unit work, as the identity of this work was not destroyed when it was transferred from the abolished Detroit Recorder's Court to the new district court. Secondly, we hold that Respondent had an obligation to bargain with Charging Party before subcontracting this work to a private contractor, as this action reduced the number of jobs in the unit and resulted in a loss of work opportunity for member[s] of Charging Party's bargaining unit.

The MERC then ordered the city to bargain with the DPOA over the decision to subcontract and to return the bargaining unit work to the unit.[2]

---

[2] The MERC order, in its entirety, provides:

Respondent City of Detroit, its officers, representatives and agents are hereby ordered to:

1. Cease-and-desist from refusing to bargain with the Detroit Police Officers Association regarding the decision to subcontract

On appeal, the Court of Appeals found that the MERC decision that the courtroom security work was bargaining unit work was supported by competent, material, and substantial evidence on the record as a whole. MCL 423.216(e); MSA 17.455(16)(e). The Court of Appeals also agreed with the MERC's conclusion that the court reorganization legislation, 1980 PA 438, did not show a legislative intent to prohibit the City of Detroit from using police officers to provide security at the new 36th District Court. Therefore, the MERC's decision that the city violated § 10(1)(e) of the PERA by refusing to bargain over the decision to subcontract this bargaining unit work was upheld. On April 22, 1986, this Court granted leave to appeal on a motion for reconsideration of its October 9, 1985, denial of leave.

II

THE 1980 COURT REORGANIZATION ACT

In 1980 PA 438, the state Legislature undertook the task of reorganizing the Wayne County and Detroit court structures, utilizing state funding for

the work of providing courtroom security for the traffic and ordinance and misdemeanor and examination functions of the 36th District Court.

2. Take the following affirmative action to effectuate the purposes of the Act:

a. Upon request, bargain in good faith with the Detroit Police Officers Association regarding the decision to subcontract the work as described in (1) above to a private contractor.

b. Return the bargaining unit work as described in (1) above to the unit by reassigning bargaining unit personnel to this work pending satisfaction of the bargaining obligation.

c. Post the attached notice in conspicuous places on the Respondent's premises, including all places where notices to employees are normally posted.

many of the reorganized court operations.[3] The
portion of 1980 PA 438 which is the background
for the instant litigation is the transfer of the
Detroit Recorder's Court traffic and ordinance divi-
sion and the misdemeanor and examination de-
partments of the felony division to the newly
created 36th District Court. 1980 PA 438 also
eliminated the Detroit Common Pleas Court,
transferring jurisdiction over its civil cases and
landlord-tenant disputes to the new 36th District
Court. Before the reorganization, the DPOA pro-
vided security at the functions previously located
in the Recorder's Court; the Wayne County sheriff
provided security for the functions previously lo-
cated in the Common Pleas Court. 1980 PA 438
included two sections relating to courtroom secu-
rity: MCL 600.1417; MSA 27A.1417 discusses secu-
rity at the felony functions remaining at the Re-
corder's Court, while MCL 600.8283; MSA
27A.8283 discusses security for the new 36th Dis-
trict Court. The City of Detroit argues that 1980
PA 438 expressly abolished the bargaining unit
work about which the DPOA asserts a right to
bargain.

MCL 600.8283; MSA 27A.8283 provides:

> In the thirty-sixth district, the district control
> unit shall be responsible for maintaining court
> security. Persons providing security services shall
> be assigned subject to the approval of the chief
> judge of the thirty-sixth district and, when per-
> forming services in the courtroom, shall be subject
> to the control of the judge holding court.

MCL 600.1417; MSA 27A.1417, on the other
hand, states:

---

[3] 1980 PA 438 was the initial step in achieving the goal of full state
funding of trial court operations. Statewide funding of trial courts is
an important element in achieving the "one court of justice" man-
dated in Const 1963, art 6, § 1.

To implement section 37(3) of Act No. 369 of the Public Acts of 1919, being section 725.37 of the Michigan Compiled Laws, the county of Wayne and city of Detroit shall enter into a contract under Act No. 35 of the Public Acts of 1951, as amended, being sections 124.1 to 124.4 of the Michigan Compiled Laws, which shall provide that the city of Detroit provide courtroom security in the recorder's court in the city of Detroit only until September 30, 1983, or until all of the officers now assigned to the recorder's court felony division have been transferred to other court duty, have elected to transfer to other duty, or have terminated their police service, whichever occurs first. Any Detroit police officer who so transfers or terminates shall be replaced by a security officer chosen by the county of Wayne and the chief judge of the recorder's court of the city of Detroit. The contract shall provide that only persons who are employees of the city of Detroit and who have complied with the minimum employment standards prepared and published under Act No. 203 of the Public Acts of 1965, as amended, being sections 28.601 to 28.616 of the Michigan Compiled Laws, shall provide the courtroom security. The contract shall also provide that the county shall annually budget and appropriate sufficient sums for the required courtroom security, and shall pay the city for the courtroom security services on a quarterly basis. The chief judge of the recorder's court shall monitor the payments for courtroom security services made pursuant to this section and shall certify to the director of the department of management and budget any delinquency in the payments to be made by the county. Upon receiving from the chief judge of the recorder's court a certification of delinquent payments, the director of the department of management and budget shall direct that the amount owed to the city be subtracted from funds otherwise payable to the county and shall pay that amount to the city.

The legislative history of § 1417 indicates a clear legislative intent to protect the presence of the

DPOA at the Detroit Recorder's Court following 1980 PA 438, for a time at least. The initial wording of § 1417, as proposed by the House, would have continued the DPOA presence at the Recorder's Court with no time limit whatsoever:

> The County of Wayne and the City of Detroit shall enter into a contract under Act No. 35 of the Public Acts of 1951, as amended, being sections 124.1 to 124.4 of the Michigan Compiled Laws, which shall provide that the City of Detroit provide courtroom security in the Recorder's Court in the City of Detroit. The contract shall provide that only persons who are employees of the City of Detroit and who have complied with the minimum employment standards prepared and published under Act No. 203 of the Public Acts of 1965, as amended, being sections 28.601 to 28.616 of the Michigan Compiled Laws, shall provide the courtroom security. The contract shall also provide that the county shall annually budget and appropriate sufficient sums for the required courtroom security and shall pay the city for the courtroom security services on a monthly basis. [1980 Journal of the House 2593.]

The first conference report changed this to a phase-out of the DPOA by September 30, 1982, with replacement by "security officers" chosen by Wayne County and the Chief Judge of the Recorder's Court. 1980 Journal of the Senate 2418-2419. The second conference report extended the phase-out period to September 30, 1983, and was ultimately adopted. The March 6, 1981, Analysis of Senate Bill 1106 by the House Legislative Analysis Section, p 13, discussed the purpose of § 1417:

> While the status and pay of practically all employee groups affected by the Detroit-Wayne County court reorganization would be protected under the bills, Detroit police officers now provid-

ing security in the Detroit Recorder's Court could be left without jobs unless they were protected as provided in Senate Bill 1106.

In contrast to the clear legislative intent to afford limited protection to DPOA members, which is evident in the history of § 1417, little is available concerning the evolution of § 8283.[4] The most that can be said of § 8283 is what it does not say: It does not by its terms either require or bar DPOA members from being the means used by the city to fulfill its requirement of "maintaining court security." While no intent to protect the DPOA is evident, neither is any contrary intent to release the city from any duties imposed under the PERA. We can only conclude, as did the MERC and the Court of Appeals, that MCL 600.8283; MSA 27A.8283 leaves the method of providing courtroom security in the 36th District Court within the discretion of the district control unit as limited by other applicable law and obligations.

## III

### THE PERA DUTY TO BARGAIN

In 1965, the Legislature enacted the public employment relations act, 1965 PA 379. Const 1963,

---

[4] The deposition of Judge Frederick E. Byrd, the first Chief Judge of the 36th District Court, indicates that before enactment of MCL 600.8283; MSA 27A.8283, consideration had been given to making the Chief Judge, rather than the city, the final authority for purposes of obtaining security personnel for 36th District Court:

  *A.* Yes, that was going to go to a private agency, although the statute had been changed originally. Originally I was to pick them.
  *Q.* You were to pick what?
  *A.* The private agency, but the City had it amended and the City picked the security service and gave the Chief Judge veto power.

art 4, § 48 gives the Legislature the authority to "enact laws providing for the resolution of disputes concerning public employees, except those in the state classified civil service." The PERA continues the previously existing prohibition of strikes by public employees, MCL 423.202; MSA 17.455(2), but creates the right of public employees to organize, MCL 423.209; MSA 17.455(9). The PERA furthermore imposes on public employers a duty to bargain collectively with the representatives of its employees. MCL 423.210-423.215; MSA 17.455(10)-17.455(15). Section 15 of the PERA imposes on public employees the duty to bargain collectively "with respect to wages, hours, and other terms and conditions of employment . . . ."[5]

 The right to collective bargaining in the public employment arena is a relatively recent development. See, generally, Edwards, *Labor Relations Law in the Public Sector* (2d ed), ch 1, pp 1-140; *Developments in the law of public employment,* 97 Harv L R 1611, 1676-1737 (1984). A key question has been and, as the instant litigation shows, continues to be the appropriate subjects of bargaining. *Id.,* pp 1682-1700. While some urge that more subjects of bargaining should be considered

---

[5] MCL 423.215; MSA 17.455(15), in its entirety, provides:

A public employer shall bargain collectively with the representatives of its employees as defined in section 11 and is authorized to make and enter into collective bargaining agreements with such representatives. For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract, ordinance or resolution incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession.

mandatory[6] in the public arena because public employees are generally prohibited from striking, *Developments, supra,* p 1686, in reality the scope of bargaining in public employment relations is generally more limited. These limitations arise because of judicial concerns about the effect of unionization upon the political process, Befort, *Public sector bargaining: Fiscal crisis and unilateral change,* 69 Minn L R 1221, 1256 (1985); restrictions in the statutory language of public employee relations statutes, Edwards, *The emerging duty to bargain in the public sector,* 71 Mich L R 885, 913-914 (1973); and concern for the "management rights" of the public employer in making policy decisions, Befort, *supra,* pp 1257-1258; *Developments, supra,* p 1688.[7] A minority of courts,

[6] Federal law recognizes three types of "subjects" of bargaining under the NLRA: mandatory, permissive, and illegal. See, generally, Befort, *Public sector bargaining: Fiscal crisis and unilateral change,* 69 Minn L R 1221, 1224-1225 (1985). Mandatory subjects are those on which the parties, on demand, must bargain in good faith. Permissive subjects are those which are not mandatory, but about which the parties may bargain. *NLRB v Borg-Warner Corp,* 356 US 342, 349; 78 S Ct 718; 2 L Ed 2d 823 (1958). The third class of subjects are "illegal" subjects—those on which legislation prohibits the parties from bargaining. See, e.g., NLRA, § 8(a)(3), 29 USC 158(a)(3) (parties are limited in extent to which union membership can be a condition of employment).

[7] The PERA, unlike many state statutes, does not have a specific provision excluding from bargaining items dealing with policy matters or within the "management rights" of the public employer. See Edwards, *supra,* pp 914-915; *Developments, supra,* p 1684, ns 9-10. While infringement on managerial prerogatives has not been argued in this case as a basis for limiting the PERA duty to bargain, we note that this Court has held in previous cases that claims that the PERA duty to bargain impinges upon the public employer's managerial power are properly left for legislative, rather than judicial, redefinition of the PERA. *CMU Faculty v CMU,* 404 Mich 268; 273 NW2d 21 (1978) (quoting from *Pontiac Police Officers Ass'n v Pontiac (After Remand),* 397 Mich 674, 684; 246 NW2d 831 [1976] [opinion of LEVIN, J.]). The legislative forum is particularly appropriate for striking a balance between, on the one hand, the governmental employer's legitimate desire to exercise discretion in the management of public funds and in the response to public concerns, and, on the other hand, the statutory duty to bargain over the conditions of employment of public employees.

ours included, have followed the precedents set in federal private labor decisions under the NLRA and construe public employee collective bargaining rights as broadly as those under the NLRA because of the similarity of state statutes to the NLRA. Edwards, *supra,* p 895.

Federal courts have interpreted § 8(d) of the NLRA as establishing as mandatory subjects of bargaining "wages, hours, and other terms and conditions of employment," 29 USC 158(d). See *NLRB v Borg Warner Corp,* 356 US 342; 78 S Ct 718; 2 L Ed 2d 823 (1958). Since § 15 of the PERA uses identical language, federal private sector precedents, while not controlling, have been viewed as helpful in construing § 15. *Local 1277, AFSCME v Center Line,* 414 Mich 642, 652; 327 NW2d 822 (1982); *DPOA v Detroit,* 391 Mich 44, 53; 214 NW2d 803 (1974). This Court has held that those issues falling within the statutory language "wages, hours, and other terms and conditions of employment" constitute mandatory subjects of bargaining under the PERA. 391 Mich 54-57; 414 Mich 652-653.

Federal labor law has long recognized that "terms and conditions of employment" for purposes of the NLRA, § 8(d), includes an employer's decision to terminate its employees and to hire a subcontractor to do the same work. In *Fibreboard Paper Products Corp v NLRB,* 379 US 203; 85 S Ct 398; 13 L Ed 2d 233 (1964), the United States Supreme Court held that an employer's unilateral decision to terminate its own maintenance staff and to hire a subcontractor to do the same work within the plant without good-faith bargaining violated the NLRA. A long line of MERC opinions holds that an employer's unilateral decision to transfer bargaining unit work outside the unit is an unfair labor practice under the PERA. *Ishpem-*

*ing v Local 1282, AFSCME,* 1985 MERC Lab Op
687; *Lansing Fire Fighters, Local 421 v Lansing,*
133 Mich App 56; 349 NW2d 253 (1984), aff'g 1983
MERC Lab Op 97; *Clinton Co Int School Dist v Ed
Ass'n,* 1984 MERC Lab Op 529, 531-536; *Roseville
v Fire Fighters Ass'n,* 1982 MERC Lab Op 1377;
*Huron School Dist v MESPA,* 1980 MERC Lab Op
773.

The Court of Appeals and the MERC held that
courtroom security work at the 36th District Court
is bargaining unit work. The city argues that the
courtroom security work for the traffic-ordinance
and misdemeanor-examination functions of the
Recorder's Court ceased to exist upon transfer of
those functions to the 36th District Court. Since
the 36th District Court was a new entity, the city
argues that the courtroom security functions at
the 36th District Court are also new. The MERC
found that security work for the traffic and ordi-
nance and misdemeanor and examination func-
tions of the 36th District Court was "transferred
more or less intact from the former Detroit Re-
corder's Court . . . ." Furthermore, the MERC
found that the positions at the 36th District Court
were "substantially identical" to the positions at
the Recorder's Court, and that the transfer from
the Recorder's Court to the 36th District Court
"was akin to an administrative reorganization
which did not destroy the identity of the work of
providing security for these functions."

There is ample evidence in the record to support
the MERC's factual finding concerning the similar-
ity of the positions in the Recorder's Court to the
misdemeanor-examination and traffic-ordinance
functions in the 36th District Court. The exhibits
in the record indicate that the city planned to use
fifty-four employees of JOWA, the private security
agency, at the 36th District Court to perform the

work previously done by fifty-six DPOA members at
the Recorder's Court. The similarity extends be-
yond pure numbers to the nature of the work. As
the Court of Appeals correctly noted,

> It is undisputed that the traffic and ordinance
> and the misdemeanor and examination functions
> of Recorder's Court for which the bargaining unit
> previously provided security were simply trans-
> ferred intact to the 36th District Court. The work
> of providing security for those court functions
> continues to exist, with only the judicial adminis-
> trative unit at which that work is performed hav-
> ing been changed. [137 Mich App 94.]

Since the MERC's findings are supported by "com-
petent, material, and substantial evidence on the
record considered as a whole," we would affirm the
MERC's conclusion that the courtroom security
work at the 36th District Court constitutes bar-
gaining unit work. MCL 423.216(e); MSA
17.455(16)(e).

We would also affirm the MERC's decision that
there was a duty to bargain over the city's decision
to subcontract bargaining unit work. The unilat-
eral removal of bargaining unit work from the
DPOA eliminated some forty-four bargaining unit
positions; the work continues to be performed at
the 36th District Court, albeit by JOWA employees
rather than DPOA members. In *Fibreboard, supra,*
p 215, the United States Supreme Court construed
"conditions of employment" under § 8(d) of the
NLRA to include an employer's decision to replace
"employees in the existing bargaining unit with
those of an independent contractor to do the same
work under similar conditions of employment."
The Court reasoned that preventing termination of
employment as a result of the subcontract consti-
tuted a condition of employment, that the peaceful

resolution of disputes concerning subcontracting
would promote the policies of the NLRA, and that
subcontracting decisions are particularly amenable
to the collective bargaining process. *Id.,* pp 210-
211. The Court further observed that the duty to
bargain would not "significantly abridge" the em-
ployer's managerial freedom because the subcon-
tract did not alter the basic business operation, the
same maintenance work still had to be performed,
and the change in workers did not involve capital
investment—just an exchange of personnel. *Id.,* p
213. The Court also noted that the prospect of cost
savings through unilateral decisions to subcontract
bargaining unit work was not a sufficient basis for
overcoming the duty to bargain, and the national
labor policy, contained in the NLRA. *Id.,* p 214.

The facts and reasoning in *Fibreboard* are most
pertinent to the instant case and our construction
of § 15 of the PERA. The resolution of labor-man-
agement strife in the public sector through collec-
tive bargaining is a basic goal of the PERA, which
joins the strike proscription, MCL 423.202; MSA
17.455(2), with the employer's duty to bargain
collectively, MCL 423.215; MSA 17.455(15). We are
not persuaded in this case that there is any basis
for distinguishing decisions concerning subcon-
tracting in Michigan public sector labor law from
those concepts defining subcontracting in the pri-
vate sector as set forth in the *Fibreboard* case.
While the duty to bargain over subcontracting
does limit to some extent the city's freedom to act,
that restriction flows from the PERA and does not
prevent the removal of the misdemeanor-examina-
tion and traffic-ordinance functions from the Re-
corder's Court to the 36th District Court. The
court reorganization plan under 1980 PA 438 did
not depend upon substituting JOWA personnel for
DPOA personnel in the 36th District Court. The

subcontract did not change the *courtroom security work* performed at the misdemeanor-examination and traffic-ordinance functions—indeed, the MERC found that the work to be performed at the 36th District Court was "substantially identical" to that performed at the Recorder's Court. Finally, the subcontract itself (as opposed to the reorganization as a whole) involved a mere exchange of personnel.[8] Therefore, we conclude that this transferral of bargaining unit work to nonunit personnel was a mandatory subject of bargaining under § 15 of the PERA, and the city's refusal to bargain constitutes a violation of § 10(1)(e) of the PERA. As the MERC cogently observed in *Ishpeming, supra,* p 692,

> [W]e view a unilateral transfer of bargaining unit work as an action striking at the heart of the bargaining relationship. Such actions taken unilaterally, even where motivated by reasons of efficiency or economics, communicate to employees most clearly the futility of collective action. There is no case in which this is more true than where an employer unilaterally decides to layoff [sic] a bargaining unit employee and to retain nonunit employees to perform the unit work.

The city violated its duty under the PERA by refusing to bargain on this subject.

The city argues that the creation of the 36th District Court should be viewed as a partial close

---

[8] The only reason for the subcontracting decision available in the record is gleaned from Judge James RYAN's deposition. Judge RYAN was the supervising justice of the Michigan Supreme Court during implementation of the reorganization. Justice RYAN's deposition indicates that the city decided to subcontract the security services because "as a general proposition, it is less expensive to the City to obtain outside or independent contractor services in many areas of Government, and that if other things are equal, that would be a desirable way to go for courtroom security." Justice RYAN also commented that, in his view, DPOA members were "substantially overqualified to perform" the security services.

of business. Under federal labor law, an employer does not have a duty to bargain over the decision to terminate a part of its operation where the decision is based upon a fundamental change in the nature and direction of the business rather than on a mere reduction in labor costs. *First Nat'l Maintenance Corp v NLRB,* 452 US 666; 101 S Ct 2573; 69 L Ed 2d 318 (1981).

In *First Nat'l,* the United States Supreme Court engaged in a balancing test to determine whether the decision to terminate part of a business operation was a mandatory subject of bargaining. The Court considered three types of management decisions: those with only an indirect effect on the employment relationship, those dealing almost exclusively with the employment relationship, and those focused on a "change in the scope and direction of the enterprise," *id.,* p 677, but with the collateral result of a profound effect on the employment relationship. In the third type of decision, the Court recognized the employer's need for relatively unfettered business judgment as well as the policies of the NLRA, holding that

> bargaining over management decisions that have a substantial impact on the continued availability of employment should be required only if the benefit, for labor-management relations and the collective-bargaining process, outweighs the burden placed on the conduct of the business. [*Id.,* p 679.]

The Court construed the *Fibreboard* decision as, in effect, utilizing this test, underlining the *Fibreboard* Court's conclusion that reduction of labor costs is a matter "peculiarly suitable for resolution within the collective bargaining framework." *Id.,* p 680, quoting *Fibreboard, supra,* p 214. Applying the balancing test to the facts of *First Nat'l,* the Court concluded that the decision to partially

terminate the business was not a mandatory subject of bargaining because the need for independent managerial discretion outweighed the slight benefit to be gained by union participation in the decision. *First Nat'l, supra,* p 686. The Court pointed out that the employer was not replacing its employees or moving the business elsewhere, there was no antiunion animus alleged, and the purpose was to reduce economic loss caused by a dispute over the management fee paid by a third party to the employer for the services terminated. *Id.,* p 688. In addition, there was no abrogation of an existing bargaining agreement. *Id.*

In the instant case, the MERC refused to characterize the reorganization as a partial close of business. Unlike the facts in *First Nat'l,* in this case, the operation was merely relocated, and similar positions were filled by different personnel. The security work continued, albeit in different locations. Thus, to the extent *First Nat'l* is based upon a partial close of business, it is inapplicable in the instant case.[9]

---

[9] The city cites a variety of recent NLRB decisions for the proposition that, following *First Nat'l Maintenance Corp,* there is no duty to bargain about a decision to subcontract which results from a fundamental change in the nature or direction of an employer's business: *Hawthorn Mellody, Inc v Teamsters,* 275 NLRB 55 (1985); *Garwood-Detroit Truck Equipment, Inc v Int'l Union,* 274 NLRB 23 (1985); *Kroger Co v United Food Union,* 273 NLRB 70 (1984); *Columbia City Freight Lines, Inc v Teamsters,* 271 NLRB 12 (1984); *Otis Elevator Co v Local 989, Int'l Union,* 269 NLRB 891 (1984).

None of the facts of the NLRB cases cited by the city actually involves a subcontracting decision such as that in the instant case. Furthermore, even the current NLRB cases acknowledge that *Fibreboard* and *First Nat'l Maintenance* require a mandatory duty to bargain where the decision turns upon a reduction of labor costs. *Otis Elevator, supra,* p 893; *Garwood-Detroit Truck Equipment, Inc, supra.* Therefore, we deem it unnecessary to comment further on the post-*First Nat'l Maintenance* holdings of the NLRB. But see, generally, Gorman, *The negligible impact of the National Labor Relations Act on managerial decisions to close or relocate,* 58 Tul L R 1354 (1984); Lane, comment, *Unfair labor practice and contract aspects of an employer's desire to close, partially close, or relocate bargaining*

## IV

### REMEDY

Finally, the city contends that the MERC order to bargain over the decision to subcontract the security work and to return the work to the bargaining unit pending satisfaction of this bargaining obligation would create administrative and legal problems to the city. We would find in these circumstances and in the absence of any record basis for these assertions that the alleged problems that are caused by the passage of time must remain the burden of the city. The MERC decision was issued on March 30, 1983, and the decision of the Court of Appeals was issued on September 4, 1984. We also note that, according to Joint Exhibit 4, art 11, the contract between the city and JOWA allows termination in whole or in part after thirty days notice.

## V

### CONCLUSION

We would hold that the city violated its duty under the PERA to bargain in good faith concerning its decision to subcontract court security work in the traffic and ordinance division and the misdemeanor and examination division of the 36th District Court transferred from the Detroit Recorder's Court. The work constituted bargaining unit work, and 1980 PA 438 did not eliminate the city's PERA duty to bargain over the subcontracting of bar-

*unit work,* 24 Duquesne L R 285 (1985). Were it necessary to further discuss the rationale of *Otis Elevator* and its applicability to the instant case, we would observe that both the Recorder's Court and the 36th District Court are courts performing the function of administering state felony and misdemeanor law in the City of Detroit. Thus, it is questionable whether there was a fundamental change in the nature or direction of the city's business as to these functions.

gaining unit work. The decision of the Court of
Appeals should be affirmed.

BRICKLEY and CAVANAGH, JJ., concurred with
BOYLE, J.

ARCHER, J. I cannot agree with the conclusion
that "1980 PA 438[1] did not eliminate the city's
PERA duty to bargain over the subcontracting of
bargaining unit work." *Ante,* pp 99-100.

While the opinion for affirmance acknowledges a
clear legislative intent to afford limited protection
to Detroit Police Officers Association members who
worked at the Detroit Recorder's Court felony
division, as evidenced in the history of MCL
600.1417; MSA 27A.1417,[2] *ante,* pp 87-89, it further
acknowledges that MCL 600.8283; MSA 27A.8283[3]

---

[1] The Wayne County court reorganization act, 1980 PA 438, effective September 1, 1981, created the new 36th District Court. Pursuant to the act, the administrative functions of the Wayne Circuit Court and the Detroit Recorder's Court were merged, the Recorder's Court traffic and ordinance division was abolished, its three traffic and ordinance division judges transferred to the Recorder's Court bench and the positions then occupied by the traffic court referees were eliminated. The act also abolished the Common Pleas Court. The new 36th District Court has a jurisdictional grant of authority different from the jurisdiction of both the traffic and ordinance division and Common Pleas Court.

[2] MCL 600.1417; MSA 27A.1417 provides, in pertinent part:

> [T]he county of Wayne and the city of Detroit shall enter into a contract . . . which shall provide that the city of Detroit provide courtroom security in the recorder's court in the city of Detroit only until September 30, 1983, *or until all of the officers now assigned to the recorder's court felony division have been transferred to other court duty, have elected to transfer to other duty, or have terminated their police service, whichever occurs first.* [Emphasis added.]

[3] MCL 600.8283; MSA 27A.8283 provides:

> In the thirty-sixth district, *the district control unit [the city] shall be responsible for maintaining court security.* Persons providing security services shall be assigned subject to the approval of the chief judge of the thirty-sixth district and, when performing services in the courtroom, shall be subject to the control of the judge holding court. [Emphasis added.]

evidences "no [legislative] intent to protect the DPOA" members assigned to provide security at the traffic and ordinance division of the Recorder's Court. *Ante,* p 89. Further, in § 8283, the Legislature failed to affirmatively hold the city responsible for phasing out the Detroit police officers assigned to the traffic and ordinance division of the Recorder's Court, as it did when phasing out courtroom security in the felony division pursuant to § 1417.

I therefore agree with the following analysis and decision of the hearing referee:

> [I]t is clear that an employer must bargain prior to making a change that will result in the removal of bargaining unit work. *City of Westland v Michigan Police Officers Ass'n,* 1981 MERC Lab Op 642; *Center Line Public School v MEA-NEA,* 1982 MERC Lab Op [756]; *River Rouge School Dist v Ed Ass'n,* 1982 MERC Lab Op [1011]. The instant case, however, involves a legislatively imposed change which rearranged former Recorder's Court functions and resulted in the creation of a new court. These statutorily mandated changes were obviously beyond the power of the City to control, cf. *City of Westland v Fire Fighters,* 1979 MERC Lab Op 166.
>
> The legislature, in enacting Public Act 438 of 1980, in effect abolished Recorder's Court as a separate independent entity; some of its functions were merged with Circuit court, others were transferred to the new 36th District Court. The new court also absorbed the former Common Pleas Court, where security had been the responsibility of Wayne County. The undersigned is in agreement with the Respondent that the City had no obligation to continue the arrangement for security personnel which it had with the old Recorder's Court, with an entirely new and different entity.

Through no action of the City, the former bargaining unit work no longer existed.[4]

It is true that the City of Detroit, as district control unit, is responsible for courtroom security under Section 8283 of the statute. However this language simply conforms with the District Court Act, 1968 PA 154, which makes the district control unit responsible for maintaining, financing, and operating the district court. I am unable to conclude that this section was intended by the legislature to continue the former arrangement whereby Detroit police officers provided courtroom security, particularly when the statute makes specific provision for phasing out the responsibility of Detroit police officers in providing courtroom security in the felony division of Recorder's Court. That language is an example of the type of detailed, complex provisions the legislature enacted in order to accomplish the transition to the new court organization. Had the legislature intended the former security practices in Recorder's Court to continue in the 36th District Court it could have so specified. Instead the only provisions relative to the 36th District Court security are that the district control unit shall be responsible for maintaining court security, and that persons providing security services shall be assigned subject to the approval of the chief judge of the 36th District Court.

I would reverse the decisions of the Court of Appeals and the MERC for the reasons stated by the hearing referee.

LEVIN, J., concurred with ARCHER, J.

RILEY, C.J. I concur with the result reached by

---

[4] It should be noted that the instant case does not involve changes in the *employing* entity, which could create a bargaining obligation. See, for example, *Southgate Comm School Dist v Federation of Teachers,* 1970 MERC Lab Op 850 (merger of two school districts); *North Dearborn Heights School Dist v AFL-CIO,* 1981 MERC Lab Op 398 (partial takeover); *Davison Bd of Ed v AFL-CIO,* 1973 MERC Lab Op 824 (opening new facilities).

Justice ARCHER, and would reinstate the decision of the hearing referee. I write separately, however, because I cannot agree with Justice ARCHER's implication that, because the Legislature did not affirmatively hold the city responsible to bargain with the DPOA, the city was not required to do so. The PERA supplies that duty.

Therefore, I agree with that portion of the hearing referee's opinion which interpreted the Wayne County court reorganization act, 1980 PA 438, as eliminating the bargaining unit work in the Detroit Recorder's Court, thereby extinguishing the city's duty to bargain over the decision to contract with a private security agency.

GRIFFIN, J., took no part in the decision of this case.