BAY CITY EDUCATION ASSOCIATION v BAY CITY PUBLIC
SCHOOLS

Docket No. 79370. Argued October 8, 1987 (Calendar No. 9). Decided
    May 5, 1988.

    The Bay City Education Association and other associations of
      employees of the Bay City Public Schools filed a complaint with
      the Employment Relations Commission, alleging that the
      school district refused to bargain over a decision to subcontract
      bargaining unit work after it had decided to terminate the
      operation of a special education center and to transfer the
      programs conducted there to the Bay-Arenac Intermediate
      School District. The commission dismissed the complaint, not-
      ing that the board's decision to terminate its program because
      of lack of funds was the type of decision recognized to be within
      the core of managerial control. The Court of Appeals, R. B.
      BURNS, P.J., and BRONSON and TIMMS, JJ., reversed, concluding
      that the district's arrangement with the intermediate district
      was a subcontract and a mandatory subject of bargaining
      (Docket No. 86092). The district appeals.

      In a unanimous opinion by Justice CAVANAGH, the Supreme
      Court *held:*

      A local school board's decision to terminate the operation of
      a special education center and to transfer the responsibility for
      the programs conducted there to an intermediate school district
      was an educational policy decision within the district's manage-
      rial discretion and was not a term and condition of employment
      subject to the duty to bargain under the public employment
      relations act.

      1. A school board has a duty to bargain collectively and in
      good faith with respect to wages, hours, and other terms and
      conditions of employment, but not with respect to educational
      policy. Whether a disputed decision is one of policy must be
      decided case by case.

      2. A local school district is required to provide special educa-

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 1764, 1770; Schools §§ 50-
    55.
See the annotations in the Index to Annotations under Collective
    Bargaining; Labor and Employment.

tion programs and services to its students either directly or by contract with an intermediate school district. Once the decision by a district to transfer the responsibility to an intermediate district is made, the intermediate district controls the program, and the students of the constituent district become students of the intermediate district for all purposes, including the calculation of state aid. Neither the local district nor the intermediate district may completely terminate its statutory obligation to the students. The statutory scheme contemplates coöperative decision making and shared responsibility for providing programs. Thus, a transfer to an intermediate district is not a subcontract or a mandatory subject of bargaining.

3. In this case, it was within the scope of the local school board's management prerogative to determine its role in the delivery of educational services. The transfer of the special education programs was a fundamental management policy decision anticipated and authorized by the Legislature, analogous to a partial closing of a business. Even though the duty to bargain does not require that the parties resolve their differences, but only that they bargain in good faith, nevertheless, it must be considered whether a particular decision is amenable to collective bargaining. In this case, the purpose of the PERA, to provide for the mediation of grievances, would not be served by requiring negotiations over the subject at issue. Under the unique circumstances of the case, the potential for harm to the district's need for independent managerial discretion outweighed the incremental benefit that might have been gained by employee participation in the decision.

Reversed.

154 Mich App 68; 397 NW2d 219 (1986) reversed.

1. SCHOOLS — COLLECTIVE BARGAINING — SPECIAL EDUCATION PROGRAMS.

A local school board's decision to terminate the operation of a special education center and to transfer the responsibility for the programs conducted there to an intermediate school district was an educational policy decision within the district's managerial discretion and was not a term and condition of employment subject to the duty to bargain under the public employment relations act (MCL 380.1701 *et seq.,* 423.201 *et seq.;* MSA 15.41701 *et seq.,* 17.455[1] *et seq.*).

2. SCHOOLS — COLLECTIVE BARGAINING — EDUCATIONAL POLICY.

A school board has a duty to bargain collectively and in good faith with respect to wages, hours, and other terms and conditions of employment, but not with respect to educational policy;

whether a disputed decision is one of policy must be decided case by case (MCL 423.215; MSA 17.455[15]).

*Foster, Swift, Collins & Coey, P.C.* (by *Stephen O. Schultz*), for the plaintiffs.

*Allsopp, Fitzgerald & Kolka, P.C.* (by *William W. Allsopp*), for the defendant.

CAVANAGH, J. Plaintiff employee associations brought unfair labor charges against Bay City Public Schools after the school board decided to terminate its operation of a special education center and to transfer the responsibility for the programs conducted there to the Bay-Arenac Intermediate School District (ISD). This Court is asked to determine whether the local district was subject to a mandatory duty to bargain in good faith with its unionized employees regarding this decision.

The Court of Appeals characterized the local district's arrangement with its ISD as a subcontract and a mandatory bargaining subject. We disagree and hold that this educational programming decision was within the management rights of the local school board and was not subject to any prior bargaining obligation. We emphasize, however, that although the local district was not required to bargain regarding the decision itself, it was subject to the duty to bargain in good faith regarding the effect of the decision on unit employees.

I

The special education center operated by Bay City Public Schools serviced Bay City students as well as students from other constituent districts of the Bay-Arenac Intermediate School District. The school district began reviewing its operation of the programs due to budget concerns connected with the possible defeat of an upcoming millage request

and the possibility that the district would be "out of formula."[1]

State financing through the ISD for special education students was considerably more advantageous. The superintendent of the ISD estimated that the ISD would receive approximately $1,775 more state aid per student than would the local district. Accordingly, the superintendents of the constituent districts recommended to their respective boards that resolutions requesting the ISD to operate the center programs be adopted. When it became apparent that these districts would no longer send their students to the center programs operated by defendant, the Board of Education of the Bay City Public Schools unanimously adopted a motion to "transfer" its special education center programs to the ISD and to ask the ISD to assume the responsibility as to Bay City students. The ISD board adopted a resolution to assume the operation of the programs shortly thereafter.

The plaintiff unions requested to bargain over the decision, arguing that defendant's "transfer" of its special education programs to the ISD constituted an implied subcontract giving rise to a mandatory duty to bargain. The school district answered that it had no duty to bargain, since it was not subcontracting but terminating its responsibility to provide the programs by transferring them to the ISD. The district was, however, willing to bargain regarding the effect of its decision on the bargaining unit employees.

---

[1] The school aid formula adopted by the Legislature ties the amount of state funding available to a local school district to the district's state equalized valuation. MCL 388.1621; MSA 15.1919(921). The formula was designed to assure a guaranteed minimum amount of state aid per student by providing more state aid to districts with less valuable tax bases. See *Durant v State Bd of Ed,* 424 Mich 364, 373; 381 NW2d 662 (1985). As we explained in *Durant,* "[a]n 'out of formula' school district is one in which the level of local funding and SEV is so high that the district does not qualify for unrestricted state aid under § 21." 424 Mich 375.

In April 1982, the plaintiff unions filed a complaint with the Michigan Employment Relations Commission, alleging that the school district refused to bargain over a decision to subcontract bargaining unit work.[2] A hearing was held May 20, 1982, and, on July 18, 1984, the hearing referee entered his findings and recommended that the charges be dismissed. On April 18, 1985, the commission concurred with the referee and dismissed the charges in their entirety. The commission concluded that in spite of the board's use of the word "transfer," the board had, in effect, terminated a program it formerly operated. The commission noted that the decision was due to a lack of funds, and it characterized the move as the "type of decision that has always been recognized to be within the core of managerial control."

The MERC denied plaintiffs' motion for reconsideration, and plaintiffs filed a claim of appeal in the Court of Appeals. In direct contrast to the decision of the MERC, the Court of Appeals determined that defendant had subcontracted with the ISD. After concluding that subcontracting is a mandatory subject of bargaining, the Court reversed the MERC's decision. *Bay City Ed Ass'n v Bay City Public Schools,* 154 Mich App 68; 397 NW2d 219 (1986). We granted defendant's application for leave to appeal[3] in order to consider whether the local board breached its duty to bargain in good faith concerning its decision to terminate the special education center programs.

---

[2] Plaintiffs' unfair labor charge originally included an additional claim regarding defendant's termination of the district's adult education program. Plaintiffs alleged that defendant subcontracted for bargaining unit work with a neighboring school district in violation of the public employment relations act. The hearing referee found that plaintiffs' allegation of subcontracting was without any factual basis, and the MERC dismissed the charge. Plaintiffs did not appeal the dismissal of this claim in the Court of Appeals.

[3] 428 Mich 873 (1987).

II

Michigan's public employment relations act[4] imposes a duty on public employers to bargain collectively and in good faith with respect to "wages, hours, and other terms and conditions of employment . . . ." MCL 423.215; MSA 17.455(15). This duty is virtually identical to that imposed under § 158(d) of the National Labor Relations Act, 29 USC 158(d), and this Court has looked to federal precedents for guidance in interpreting § 15 of the PERA. *Detroit Police Officers Ass'n v Detroit*, 391 Mich 44, 53; 214 NW2d 803 (1974); *Local 1277, Metropolitan Council No 23, AFSCME v Center Line*, 414 Mich 642, 652-653; 327 NW2d 822 (1982).

Central to the resolution of the issue presented here is a determination whether the local board's decision to discontinue its operation of the special education center programs affects "terms and conditions of employment." Issues encompassed by that statutory language are mandatory bargaining subjects. *Local 1277, supra.*

The scope of the bargaining obligation of public employers has been broadly construed by Michigan courts.[5] This broad construction has been based primarily on an analogy to federal cases in the private sector and evidences a recognition of the strike prohibition imposed on public employees under MCL 423.202; MSA 17.455(2).

In the educational setting, we have previously looked to whether the employer's action clearly constitutes educational policy, for which there is no bargaining obligation, or a condition of employ-

---

[4] MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.*

[5] See, e.g., *Van Buren Public School Dist v Wayne Circuit Judge*, 61 Mich App 6; 232 NW2d 278 (1975).

ment, to which the duty to bargain extends.[6] *Central Michigan Univ Faculty Ass'n v Central Michigan Univ*, 404 Mich 268, 279-280; 273 NW2d 21 (1978). As we recognized in *Local 1277, supra,* 660-661, certain subjects are within the scope of management prerogative, and the public employer, who remains politically accountable for such decisions, must not be severely restricted in its ability to function effectively.[7] Ultimately, the appropriate characterization of an issue or a disputed decision turns on the particular facts of each case.

The elimination of bargaining unit work through subcontracting has been considered a term and condition of employment under the NLRA. *Fibreboard Paper Products Corp v NLRB,* 379 US 203; 85 S Ct 398; 13 L Ed 2d 233 (1964). The Supreme Court held in *Fibreboard* that the private employer's unilateral decision to subcontract for maintenance work previously performed by union members was a mandatory subject of bargaining.[8] 379 US 218. The Court carefully limited its holding, however, and cautioned that its "decision need not and does not encompass other forms of 'contracting out' or 'subcontracting' which arise daily in our complex economy." 379 US 215. Justice Stewart emphasized in his concurrence that "[t]he Court most assuredly does not decide that every managerial decision which necessarily terminates an individual's employment is subject to the duty to bargain. Nor does the Court decide

---

[6] See anno: 84 ALR3d 242, 255-260, for citation of cases addressing the dichotomy between issues affecting conditions of employment and issues of policy which fall within the category of managerial prerogative.

[7] See note, *Developments in the law of public employment,* 97 Harv L R 1611, 1676-1700 (1984); Befort, *Public sector bargaining: Fiscal crisis and unilateral change,* 69 Minn L R 1221, 1256-1262 (1985), for discussion of political and policy considerations in public sector bargaining.

[8] See, generally, anno: 6 ALR3d 1148.

that subcontracting decisions are as a general matter subject to that duty." 379 US 218.

In reliance on the *Fibreboard* decision, the Court of Appeals concluded that the local board's decision at issue here constituted subcontracting and was, therefore, within the mandatory bargaining obligation. The Court also looked to its decision in *Van Buren Public School Dist v Wayne Circuit Judge,* 61 Mich App 6, 28-32; 232 NW2d 278 (1975), in which it determined that the school district's decision to subcontract for bus driving services, thereby eliminating bargaining unit work, was within the scope of the duty to bargain.

As the *Fibreboard* Court cautioned, however, the facts of each case must be carefully examined when determining the extent of the bargaining obligation. We are persuaded that, on the unique facts of this case, the board's decision regarding the extent of its curriculum was not a term or condition of employment subject to mandatory bargaining. Our decision is based on the PERA as well as on pertinent provisions of article 3 of the School Code, MCL 380.1701 et seq.; MSA 15.41701 et seq.

The State Board of Education has the duty to "[d]evelop, establish, and continually evaluate and modify" a state plan for the delivery of special education programs and services in coöperation with intermediate school districts. MCL 380.1701(a); MSA 15.41701(a). In turn, the board of each intermediate school district has the duty to "[d]evelop, establish, and continually evaluate and modify" its plan for special education in coöperation with its constituent districts. Each intermediate school district is required to submit its plan to the State Board of Education for approval. MCL 380.1711(1)(a); MSA 15.41711(1)(a). Local districts are required to provide special education programs

and services "in accordance with the intermediate school district special education plan . . . ." MCL 380.1751(1); MSA 15.41751(1).

The statute also provides that a local school district may either operate the programs directly or "contract" with its ISD for the delivery of special education programs and services.[9] Once a local board transfers this responsibility to its ISD, however, the ISD controls the programming, and the students of the constituent district become students of the ISD for all purposes including the calculation of state aid.

Once the transfer was effectuated in the present case, the local board relinquished its management control over the special education programs and assumed a position on an equal footing with the other constituent districts of the ISD. In spite of whether the ISD or the local district provides the program or service, however, neither party may completely terminate its statutory obligation to these special education students. The Legislature crafted a statutory scheme that contemplates coöperative decision making and shared responsibility for providing programs and services designed to develop the maximum potential and address the

---

[9] The statute provides in pertinent part:

The board of a local school district shall provide special education programs and services . . . in either of the following ways or a combination thereof:

(a) Operate the special education program or service.

(b) Contract with its intermediate school board, another intermediate school board, another local school district board, an adjacent school district board in a bordering state, the Michigan school for the blind, the Michigan school for the deaf, the department of mental health, the department of social services, or any combination thereof, for delivery of the special education programs or services, or with an agency approved by the state board for delivery of an ancillary professional special education service. [MCL 380.1751(1); MSA 15.41751(1).]

special needs of each handicapped child in this state. In recognition of this comprehensive statutory scheme, we decline to consider this arrangement a subcontract[10] or to subject it to a *Fibreboard* analysis.

Unlike *Fibreboard* or *Van Buren,* this case does not simply involve an attempt by a public employer to substitute private employees for public employees in order to conserve finances. Importantly, there are no allegations of antiunion animus.[11] The local school district was faced with a reduced student population, declining revenue, and an uncertain financial future. The local board and its ISD entered into the arrangement at issue here in order to discharge the responsibility vested by law in both of them while also maximizing state funding for special education programs and services. The Legislature anticipated and authorized this exercise of managerial control. In addition, the Legislature provided for a measure of employment security for affected employees by enacting MCL 380.1742; MSA 15.41742, which mandates that when an ISD takes over a special education program from a constituent district, it "shall employ first an employee of a constituent district whose employment is discontinued . . . ." When the particular facts of this case are considered in conjunction with the statutory framework, we are persuaded that the prior bargaining obligation does not extend to this decision.

In a post-*Fibreboard* case, *First Nat'l Mainte-*

---

[10] The Supreme Court acknowledged in *Fibreboard, supra,* 215, n 8, that "the terms 'contracting out' and 'subcontracting' have no precise meaning." We agree with the MERC's statement in its order denying rehearing that, "despite the use of the term 'contract' in section 1751, the record here does not indicate that the transaction between Respondent and the Intermediate School District constituted a subcontract, implied or otherwise."

[11] See anno: 6 ALR3d 1148, 1159-1163.

*nance Corp v NLRB,* 452 US 666; 101 S Ct 2573; 69 L Ed 2d 318 (1981), the Supreme Court fashioned a balancing test and applied it to a private employer's decision to close a portion of its maintenance service business for economic reasons. Under the *First Nat'l* test, bargaining over management decisions that have a substantial effect on the continued availability of employment is required "only if the benefit, for labor-management relations and the collective-bargaining process, outweighs the burden placed on the conduct of the business." 452 US 679. Although the holding is, once again, limited to its facts, 452 US 686, n 22, the Court concluded that "the harm likely to be done to an employer's need to operate freely in deciding whether to shut down part of its business purely for economic reasons outweighs the incremental benefit that might be gained through the union's participation in making the decision . . . ." 452 US 686. Thus, the decision was not a mandatory subject of bargaining, but was rather "a significant change in petitioner's operations, a change not unlike opening a new line of business or going out of business entirely." 452 US 688.

In *Local 1277, AFSCME v Center Line, supra,* 656-657, we reviewed both *Fibreboard* and *First Nat'l Maintenance Corp,* and noted that the holdings of those cases were strictly limited to their facts. At issue in *Local 1277,* was a layoff clause in a collective bargaining agreement which provided that layoffs of police officers had to be made in conjunction with layoffs and cutbacks in other departments. In holding that the layoff provision was not a mandatory subject of bargaining, we stated that the case was more closely aligned with *First Nat'l* than with *Fibreboard,* since the police officers were not going to be replaced and because

a layoff of employees is similar to a partial closing of a business. 414 Mich 658. We concluded that the layoff provision severely limited the public employer's ability to function effectively by unduly restricting its ability to make decisions regarding the size and scope of municipal services.[12] While we respected the union's interest in protecting the job security of its members, we rejected its claim that the clause did little to restrict the city's decision-making process and concluded instead that the clause spoke to the very essence of the decision. 414 Mich 660-661.

The same conclusion is warranted in the present case.[13] It is within the scope of a local school board's management prerogative to determine its role in the delivery of educational services. The disputed decision at issue here was a coöperative one made in recognition of the interrelationship and funding concerns of all the constituent districts and their intermediate school district.[14] The school district's transfer of special education cen-

---

[12] In *Beloit Ed Ass'n v Employment Relations Comm*, 73 Wis 2d 43, 58-60; 242 NW2d 231 (1976), the Wisconsin Supreme Court developed the "primary relation test" for distinguishing between permissive and mandatory bargaining subjects and held that matters primarily related to wages, hours, or conditions of employment were mandatorily bargainable. We noted the significance of the *Beloit* decision in *Local 1277, supra,* 662, and commented that "[p]resumably, matters of curriculum determination are not subjects of mandatory bargaining."

[13] A similar analysis was used by the Court of Appeals in *West Ottawa Ed Ass'n v West Ottawa Bd of Ed,* 126 Mich App 306; 337 NW2d 533 (1983), in which the Court concluded that a local board's decision to discontinue a dance class, a decision made solely because of budget concerns, was not a mandatory bargaining subject. We are not persuaded by plaintiffs' attempt to distinguish this case or discard its rationale because of the statutory requirement imposed on local boards to provide for special education services. Plaintiffs misapprehend the options available to local districts pursuant to the School Code and fail to accord adequate consideration to the statutory protection afforded employees affected by the district's decision. In the present case, the balance in favor of the exercise of managerial discretion was struck by the Legislature. See *Detroit Police Officers Ass'n v Detroit,* 428 Mich 79, 91, n 7; 404 NW2d 595 (1987).

[14] Without students from the other constituent districts participat-

ter programs to the ISD was a fundamental management policy decision anticipated and authorized by the Legislature. As was the MERC,[15] we are persuaded that the board's decision is analogous to a partial closing of a business.

We recognize that the imposition of the duty to bargain does not require that the parties resolve their differences, but only that they bargain in good faith. Nevertheless, it must be considered whether a particular decision would be amenable to the collective bargaining process. We conclude that the purpose of the PERA, "to provide for the mediation of grievances," would not be served by requiring negotiations over this subject. This is not the type of situation where labor concessions may have alleviated the employer's economic considerations, a situation providing an incentive for both labor and management to confer voluntarily prior to making a change.[16]

Plaintiff unions contend that this decision cannot be characterized as educational policy, since they did not seek to bargain over the content of the program, but instead sought to bargain over who would provide the professional and support services necessary to implement the program. Plaintiffs' employment security, however, was protected by statute which directed the ISD to give

ing in defendant's center programs, plaintiff unions would have presumably suffered a reduction in membership even if defendant had continued to operate the programs solely for its own students.

[15] This discussion is premised on the appropriate standard of review for MERC decisions. We review a decision of the MERC to determine whether it is authorized by law and whether the findings on which the decision is based are supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; MCL 423.216(d), (e); MSA 17.455(16)(d), (e); *MERC v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 121; 223 NW2d 283 (1974).

[16] See *First Nat'l Maintenance Corp, supra,* 680-686; Lane, *Unfair labor practice and contract aspects of an employer's desire to close, partially close, or relocate bargaining unit work,* 24 Duq L R 285, 307 (1985).

hiring priority to the employees of the constituent district whose employment was discontinued. MCL 380.1742; MSA 15.41742. Plaintiffs have not suggested that this statutory mandate is inapplicable or that it has been violated, and the local district remains ready to bargain regarding the implementation of its decision.[17]

With protections for affected employees built into the process, the only benefit for plaintiffs to gain from bargaining would be a delay or a reversal of the school district's decision, a decision the board clearly had the statutory authority to make. Faced with a projected budget deficit, the local board was forced to weigh the interests of employees protected by statute against the needs of children in perhaps the most vulnerable group of the student population. The board was aware that if these students were educated under the auspices of the ISD, significantly more state funding would be available to provide these students with the most comprehensive program possible. A local school board must be able to exercise its management power in order to prudently discharge its fiscal responsibilities while also safeguarding the best interests of the students educated in the district. Importantly, however, the plaintiff unions were free to protect their members relative to the implementation of the decision, *Local 1277, supra,* 661, and the record supports the conclusion that the local board respected their rights to do so.

This case involves a fundamental change in the operation of a public employer and corresponding statutory protection for affected employees. Under

---

[17] MCL 380.1742(3); MSA 15.41742(3) provides that § 1742 does not apply "when the affected person is covered under an agreement which provides substantially the same benefits." Plaintiffs have not suggested that this statute is inapplicable, and the collective bargaining agreements in the record do not address priority hiring in this situation.

these unique circumstances, the potential harm to the defendant board's need for independent managerial discretion outweighs the incremental benefit that might have been gained through employee participation in this decision. Therefore, we hold that the board's decision to terminate its operation of the special education center programs was an educational policy decision within its managerial discretion and was not a "term and condition of employment" subject to the duty to bargain under § 15 of the PERA. To hold otherwise would unduly restrict local school boards from making decisions that are specifically authorized by the Legislature and that, although based on economic concerns, also advance the best interests of their special education students.

Accordingly, we reverse the decision of the Court of Appeals and reinstate the decision of the MERC which dismissed the unfair labor charges against the local board.

RILEY, C.J., and LEVIN, BRICKLEY, BOYLE, ARCHER, and GRIFFIN, JJ., concurred with CAVANAGH, J.