# STATE OF MICHIGAN

# COURT OF APPEALS

PORT HURON EDUCATION ASSOCIATION,

Charging Party-Appellant,

v

PORT HURON AREA SCHOOL DISTRICT,

Respondent-Appellee.

UNPUBLISHED
February 16, 2016

No. 325022
MERC
LC No. 10-000255

Before: HOEKSTRA, P.J., and METER and M. J. KELLY, JJ.

PER CURIAM.

The Port Huron Education Association (PHEA) appeals as of right from a November 19, 2014, order of the Michigan Employment Relations Commission (MERC). MERC concluded, among other things, that the Port Huron Area School District (the District) did not have a duty of collective bargaining with regard to the restructuring of the provision of psychological services to students. We affirm.

As a cost-saving measure, the District elected to contract with its local intermediate school district (ISD), Regional Educational Service Agency of St. Clair County (RESA), for school psychologists to service its special education students, resulting in the layoff of six school psychologists. RESA used outside contractors for the psychological work. PHEA filed an unfair labor practice charge with regard to the layoffs. The administrative law judge (ALJ) recommended a dismissal of the charge; MERC agreed, adopted the ALJ's recommended order, and dismissed the charge.

PHEA first argues that MERC erred in determining that the District did not have a duty to bargain the alleged "subcontracting" of the work in question.

The Public Employment Relations Act (PERA), MCL 423.201 *et seq.*, is "the dominant law regulating public employee labor relations." *Rockwell v Bd of Ed of School Distr of Crestwood*, 393 Mich 616, 629; 227 NW2d 736 (1975). "It imposes a duty of collective bargaining on public employers, unions, and their agents . . . ." *St Clair Intermediate School Distr v Intermediate Ed Ass'n/Michigan Ed Ass'n*, 458 Mich 540, 550; 581 NW2d 707 (1998). MERC has exclusive jurisdiction over unfair labor practices. *Id.*

-1-

"We review a decision of . . . MERC to determine whether it is authorized by law and whether the findings on which the decision is based are supported by competent, material, and substantial evidence on the whole record." *Bay City Ed Ass'n v Bay City Public Schools*, 430 Mich 370, 382 n 15; 442 NW2d 504 (1988). A reviewing court must not "invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views." *Michigan Employment Relations Comm'n v Detroit Symphony Orchestra, Inc*, 393 Mich 116, 124; 223 NW2d 383 (1974). "MERC's legal determinations may not be disturbed unless they violate a constitutional or statutory provision or they are based on a substantial and material error of law. In contrast to . . . MERC's factual findings, its legal rulings are afforded a lesser degree of deference because review of legal questions remains de novo . . . ." *Pontiac School Distr v Pontiac Ed Ass'n*, 295 Mich App 147, 152; 811 NW2d 64 (2012) (citations and quotation marks omitted).

Here, MERC concluded that the District

had no duty to bargain over its decision to use its RESA to provide psychological evaluations and testing. Under § 1751 of the School Code, MCL § 380.1751(1), a local school district may either operate special education programs directly, "contract" with its ISD for the delivery of special education programs and services or utilize a combination of these alternatives. Per that section of the School Code, once a local board transfers responsibility to its ISD, the ISD controls the manner in which the work is performed.

MCL 380.1751 states:

(1) The board of a local school district shall provide special education programs and services designed to develop the maximum potential of each student with a disability in its district on record under section 1711 for whom an appropriate educational or training program can be provided in accordance with the intermediate school district special education plan, in either of the following ways or a combination thereof:

(a) Operate the special education program or service.

(b) Contract with its intermediate school board, another intermediate school board, another local school district board, an adjacent school district board in a bordering state, the Michigan schools for the deaf and blind, the department of community health, the department of human services, or any combination thereof, for delivery of the special education programs or services, or with an agency approved by the superintendent of public instruction for delivery of an ancillary professional special education service. The intermediate school district of which the local school district is constituent shall be a party to each contract even if the intermediate school district does not participate in the delivery of the program or services.

(2) A local school district contract for the provision of a special education program or service shall provide specifically for:

-2-

(a) Special education buildings, equipment, and personnel necessary for the operation of the subject program or service.

(b) Transportation or room and board, or both, for persons participating in the programs or services as required under sections 1756 and 1757.

(c) The contribution to be made by the sending local school district if the program or service is to be operated by another party to the contract. The contribution shall be in accordance with rules promulgated by the superintendent of public instruction.

(d) Other matters the parties consider appropriate.

(3) Each program or service operated or contracted for by a local school district shall be in accordance with the intermediate school district's plan established pursuant to section 1711.

(4) A local school district may provide additional special education programs and services not included in, or required by, the intermediate school district plan.

(5) This section shall be construed to allow operation of programs by departments of state government without local school district contribution.

PHEA contends that "[a]lthough Section 1751 appears to empower school boards to unilaterally contract part or all of their special education services, the PERA requires that employers bargain over the subcontracting of instructional bargaining unit work." PHEA cites MCL 423.215, which states, in part:

(1) A public employer shall bargain collectively with the representatives of its employees as described in section 11 and may make and enter into collective bargaining agreements with those representatives. Except as otherwise provided in this section, for the purposes of this section, to bargain collectively is to perform the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or to negotiate an agreement, or any question arising under the agreement, and to execute a written contract, ordinance, or resolution incorporating any agreement reached if requested by either party, but this obligation does not compel either party to agree to a proposal or make a concession.

PHEA contends that the school psychologists were "included in the instructional bargaining unit under the collective bargaining agreement" because they were professional staff members who worked closely with certified teachers. PHEA contends that the District was required to bargain before transferring work to RESA and that PERA prevails over MCL 380.1751.

MERC, as well as the ALJ, found the Michigan Supreme Court's opinion in *Bay City*, *supra*, to be dispositive on this issue. In *Bay City*, 430 Mich at 372, unions "brought unfair labor

charges against Bay City Public Schools after the school board decided to terminate its operation of a special education center and to transfer the responsibility for the programs conducted there to the Bay-Arenac Intermediate School District . . . ." The unions "requested to bargain over the decision, arguing that the . . . 'transfer' of . . . the special education programs to the ISD constituted an implied subcontract giving rise to a mandatory duty to bargain." *Id*. at 373. The Supreme Court stated:

> It is within the scope of a local school board's management prerogative to determine its role in the delivery of educational services. The disputed decision at issue here was a cooperative one made in recognition of the interrelationship and funding concerns of all the constituent districts and their intermediate school district. The school district's transfer of special education center programs to the ISD was a fundamental management policy decision anticipated and authorized by the Legislature. As was the MERC, we are persuaded that the board's decision is analogous to a partial closing of a business. [*Id*. at 381-382.]

The Court also concluded that the purpose of PERA "would not be served by requiring negotiations over this subject" because it was "not the type of situation where labor concessions may have alleviated the employer's economic considerations . . . ." *Id*. at 382. The Court concluded:

> Therefore, we hold that the board's decision to terminate its operation of the special education center programs was an educational policy decision within its managerial discretion and was not a "term and condition of employment" subject to the duty to bargain under § 15 of the PERA. To hold otherwise would unduly restrict local school boards from making decisions that are specifically authorized by the Legislature and that, although based on economic concerns, also advance the best interests of their special education students. [*Id*. at 384.]

In the present case, there was a financial crisis in the District, and it was decided that RESA would take responsibility for providing some of the legally mandated services; the director of legal services and human resources for RESA pointed out that RESA could get more funding than the District could on its own. The *Bay City* case is persuasive under the circumstances and renders PHEA's argument unavailing.

PHEA argues that MERC erred in finding that the District did not violate PERA when it "agreed to disregard the employment protections provided by section 1742 of the Revised School Code." In *Bay City*, the Court emphasized the existence of MCL 380.1742, which states, in part:

> (1) When employing additional personnel to implement a special education program or service, the intermediate school board shall employ first an employee of a constituent district whose employment is discontinued because the constituent district is discontinuing a special education program or service for which the person was employed.

The *Bay City* Court stated:

> Plaintiffs' employment security, however, was protected by statute which directed the ISD to give hiring priority to the employees of the constituent district whose employment was discontinued. MCL 380.1742; MSA 15.41742. Plaintiffs have not suggested that this statutory mandate is inapplicable or that it has been violated, and the local district remains ready to bargain regarding the implementation of its decision. [*Bay City*, 430 Mich at 383.]

PHEA argues that there was a conspiracy to avoid the protections of MCL 380.1742 and notes that the school psychologists whose positions were terminated were not hired by RESA. With regard to this issue, MERC concluded: "The Commission . . . agrees with the ALJ's conclusion that PERA does not provide a cause of action for conspiracy or for conspiracy to violate another statute." PHEA makes no attempt to demonstrate that PERA does in fact provide a cause of action for conspiracy. "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (citation and quotation marks omitted). The remaining gist of PHEA's argument appears to be that, because the psychologists whose positions were terminated were not hired by RESA,[1] the *Bay City* case is inapplicable to the present case and bargaining was required. PHEA also emphasizes that the District did not transfer total control of services to PERA but retained oversight, thus further distinguishing the present case from *Bay City*. However, we agree with the ALJ that the import of the *Bay City* decision is its emphasis on the fact that RESA had certain statutory obligations to fulfill in cooperation with the District. See *Bay City*, 430 Mich at 377. The *Bay City* Court stated:

> The Legislature crafted a statutory scheme that contemplates cooperative decision making and shared responsibility for providing programs and services designed to develop the maximum potential and address the special needs of each handicapped child in this state. In recognition of this comprehensive statutory scheme, we decline to consider this arrangement a subcontract . . . . [*Id*. at 378-379.]

As noted by the ALJ, "under the School Code, the decision as to what kind of psychological or any other type of services would be offered to Respondent's special education students, and how

---

[1] MCL 380.1711(1) indicates that an ISD may "[e]mploy or engage special education personnel" or may "[c]ontract for the delivery of a special education program or service . . . ." Here, RESA used contractors, not "employees," for the work. The psychologists whose employment was terminated were given an opportunity to bid for contracts. (5/23/12 transcript, p 15.)

they would be delivered, was ultimately not Respondent's alone, but rather a decision to be made cooperatively with the RESA."[2]  The ALJ continued:

[2] MCL 380.1711 states:

(1) The intermediate school board shall do all of the following:

(a) Develop, establish, and continually evaluate and modify in cooperation with its constituent districts, a plan for special education that provides for the delivery of special education programs and services designed to develop the maximum potential of each student with a disability of whom the intermediate school board is required to maintain a record under subdivision (f).  The plan shall coordinate the special education programs and services operated or contracted for by the constituent districts and shall be submitted to the superintendent of public instruction for approval.

(b) Contract for the delivery of a special education program or service, in accordance with the intermediate school district plan in compliance with section 1701.  Under the contract the intermediate school board may operate special education programs or services and furnish transportation services and room and board.

(c) Employ or engage special education personnel in accordance with the intermediate school district plan, and appoint a director of special education meeting the qualifications and requirements of the rules promulgated by the superintendent of public instruction.

(d) Accept and use available funds or contributions from governmental or private sources for the purpose of providing special education programs and services consistent with this article.

(e) Lease, purchase, or otherwise acquire vehicles, sites, buildings, or portions thereof, and equip them for its special education staff, programs, and services.

(f) Maintain a record of each student with a disability under 26 years of age, who is a resident of 1 of its constituent districts and who has not graduated from high school, and the special education programs or services in which the student with a disability is participating on the fourth Friday after Labor day and Friday before Memorial day.  The sole basis for determining the local school district in which a student with a disability is a resident shall be the rules promulgated by the superintendent of public instruction notwithstanding the provisions of section 1148.  The records shall be maintained in accordance with rules promulgated by the superintendent of public instruction.

(g) Have the authority to place in appropriate special education programs or services a student with a disability for whom a constituent district is required to provide special education programs or services under section 1751.

(h) Investigate special education programs and services operated or contracted for by the intermediate school board or constituent district boards and report in writing failures to comply with the provisions of a contract, statute, or rule governing the special education programs and services or with the intermediate school district plan, to the local school district board and to the superintendent of public instruction.

Requiring Respondent to bargain with Charging Party over its decision to enter into an arrangement with the RESA would, I conclude, not only conflict with Respondent's inherent right to make decisions about educational policy, but also interfere with the RESA's ability to satisfy its own statutory responsibilities. I conclude that under the Court decision in *Bay City*, Respondent did not have an obligation under PERA to bargain with Charging Party over the decision to enter into an arrangement with the RESA to provide psychological evaluations and testing for Respondent's special education students.

MERC concurred with the reasoning of the ALJ. We do as well. Despite the differences between the factual scenarios in *Bay City* and the present case, we nonetheless find the reasoning in *Bay City* sufficiently persuasive to uphold the decision of MERC.

PHEA next argues that MERC erred in finding that PHEA failed to make a timely demand to bargain and thus waived any right to bargain. Given our decision, this issue is moot. Nevertheless, we find no error with respect to MERC's decision. PHEA's executive director, Kathleen Trongo, testified that by February 2010 she was aware that school psychologists may be laid off but that she did not demand to bargain over the issue. In addition, the District's assistant superintendent testified that Trongo told him "they didn't plan on bargaining or, you know, submitting a proposal because they had a contract." MERC's decision is supported by competent, material, and substantial evidence on the whole record. *Bay City*, 430 Mich at 382 n 15.

---

(*i*) Operate the special education programs or services or contract for the delivery of special education programs or services by local school district boards, in accordance with section 1702, as if a local school district under section 1751. The contract shall provide for items stated in section 1751 and shall be approved by the superintendent of public instruction. The intermediate school board shall contract for the transportation, or room and board, or both, or persons participating in the program or service as if a local school district board under sections 1756 and 1757.

(j) Receive the report of a parent or guardian or, with the consent of a parent or guardian, receive the report of a licensed physician, registered nurse, social worker, or school or other appropriate professional personnel whose training and relationship to students with a disability provide competence to judge them and who in good faith believes that a person under 26 years of age examined by the professional is or may be a student with a disability, and immediately evaluate the person pursuant to rules promulgated by the superintendent of public instruction. A person making or filing this report or a local school district board shall not incur liability to a person by reason of filing the report or seeking the evaluation, unless lack of good faith is proven.

(k) Evaluate pupils in accordance with section 1311.

(2) The intermediate school board may expend up to 10% of the annual budget but not to exceed $12,500.00, for special education programs approved by the intermediate school board without having to secure the approval of the superintendent of public instruction.

PHEA next argues that MERC erred in finding that the District did not fail to provide PHEA with requested documents in response to letters on April 29, 2010, June 16, 2010, and August 25, 2010. Essentially, PHEA contends that the District was hiding its intent to terminate the psychologist positions. However, Trongo admitted that the responses to both earlier letters were truthful because there was no evidence at the time of a "transfer" of positions. Trongo further admitted that in response to the third letter, she received "all the information [she] requested[.]" MERC's decision thus was supported by competent, material, and substantial evidence on the whole record. *Id*.

PHEA lastly argues that MERC erred "in failing to draw an adverse inference regarding [the District's] awareness of [PHEA's] knowledge of its discussions with RESA." PHEA states that the District "went to great lengths to keep [PHEA] from finding out about its agreement to subcontract bargaining work to RESA." PHEA relies on second-hand information that (1) the District's Director of Special Education met with the school psychologists toward the end of the 2009/2010 school year and told them they would be transferred to work with RESA and (2) the District's Human Resources Director told psychologists that the District was in the process of looking at "a deal" with RESA for the positions and more information was being sought. PHEA states that "[t]here is no explanation for [the District's] failure to call witnesses with knowledge of [the District's] true intentions" and that MERC should have drawn an adverse inference regarding the absence of these witnesses. See *Isagholian v Transamerica Ins Corp*, 208 Mich App 9, 15-16; 527 NW2d 13 (1994) (discussing missing witnesses and adverse inferences). MERC concluded that PHEA "has not specified any relevant facts that might properly be inferred from [the District's] failure to call" the witnesses. MERC further noted that PHEA had offered insufficient evidence to establish a violation of PERA and that the District "was not obligated to offer additional testimony . . . ." Finally, MERC noted that PHEA could have subpoenaed the witnesses.

We find no error with regard to MERC's decision. We cannot discern how the calling of these witnesses would have affected the outcome of this case, and nothing prevented PHEA from itself calling the witnesses.

Affirmed.


/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Michael J. Kelly