SOUTHFIELD POLICE OFFICERS ASSOCIATION v SOUTHFIELD

Docket No. 81974. Argued November 2, 1988 (Calendar No. 9). Decided August 22, 1989.

The Southfield Police Officers Association filed a complaint with the Employment Relations Commission against the City of Southfield, alleging that the city had violated the public employment relations act by refusing to bargain concerning its decision to transfer certain job duties in a crime prevention program and the city's auto pound from members of the association to civilian employees who were members of a different bargaining unit and were represented by a different union. A hearing referee recommended dismissal of the charge because the association had not established that the work transferred had been exclusively performed in the past by its members. The MERC affirmed. The Court of Appeals, GILLIS, P.J., and SHEPHERD and W. A. PORTER, JJ., reversed, refusing to apply the MERC's exclusivity rule and substituting the NLRB "adverse impact" rule, and remanded the case for further proceedings (Docket No. 88574). The city appeals.

In an opinion by Justice GRIFFIN, joined by Chief Justice RILEY, and Justices LEVIN and BRICKLEY, the Supreme Court held:

A city's decision to unilaterally transfer certain job duties to one of several bargaining units which previously had interchangeably performed the work was not an unfair labor practice under the PERA, where the transferred duties had not been exclusively assigned to a particular unit and were not bargaining unit work subject to the duty to bargain.

1. Findings by the Employment Relations Commission with respect to questions of fact are conclusive if supported by competent, material, and substantial evidence on the record considered as a whole. A court may review the law underlying

REFERENCES

Am Jur 2d, Administrative Law §§ 241 et seq.; Labor and Labor Relations §§ 1769, 1770, 1771.

Index to Annotations under Administrative Law; Collective Bargaining; Labor and Employment; Public Officers and Employees.

a decision, including whether the commission's decision was authorized by law. The commission's determination may be set aside on appeal if it is found to be based on a substantial and material error of law. In this case, use of the exclusivity rule by the commission was not an error of law merely because the rule has not been construed by case law. Absence of published precedent as reinforcement for a long-established commission rule does not deprive that rule of relevance.

2. Under § 9 of the public employment relations act, public employees enjoy the right to organize and to engage in collective bargaining. Section 15 provides that a public employer must bargain collectively with the recognized representative of its public employees. Certain issues, including wages, hours, and other terms and conditions of employment, are considered to be mandatory subjects of collective bargaining. A unilateral action on the part of a public employer, or its refusal to engage in collective bargaining, with respect to a mandatory subject of bargaining may amount to an unfair labor practice under § 10(1)(e) of the act. The determination of what constitutes a mandatory subject of bargaining under the act must be decided case by case.

3. The duty of a public employer to bargain extends to a diversion of unit work to nonunit employees or to the subcontracting of the unit work to independent contractors. However, in instances where job functions historically have been assigned by a public employer interchangeably to both unit and nonunit employees, i.e., were not assigned exclusively to one unit, the mere fact that the employer assigns more of the work to one of the units does not violate the PERA or give rise to an obligation to bargain.

4. The federal "adverse impact" test relied upon by the Court of Appeals is one of several tests developed by the federal courts to determine whether the diversion of unit work was a mandatory subject of bargaining. However, federal precedent regarding private sector labor law, while helpful in deciding cases arising under the PERA, is not controlling. It is relevant and persuasive only to the extent that it is based on similar facts and circumstances and best effectuates the policy of the PERA. The tests formulated by the federal courts and the NLRB to determine whether a duty to bargain over the diversion of bargaining unit work existed in the private sector are inappropriate for use in this case. In the federal cases, it was assumed that the work in question was bargaining unit work. In this case, by contrast, the disputed work had been interchangeably performed by more than one bargaining unit, thereby raising a

real question regarding whether the transferred duties were in fact bargaining unit work.

5. The exclusivity rule developed by the MERC recognizes that before a bargaining unit may lay sole claim to a particular work assignment, the unit must establish that the work was performed exclusively by its unit members. If the work has not been assigned exclusively to one unit, there is no obligation on the part of the employer to bargain before shifting duties among the employees. If particular work has been performed interchangeably by employees in several bargaining units, and the public employer has not been limited by the terms of a collective bargaining agreement, the public employer is able to make assignments according to the expertise required by the work. In this case, there is no dispute that the work in question was interchangeably assigned to the officers and civilian employees or that it was not exclusively assigned to the officers.

Reversed.

Justice CAVANAGH, joined by Justice ARCHER, dissenting, stated that the standard adopted in this case by the Court of Appeals that the duty to bargain will arise only where an employer's action is inconsistent with past operating practices, effects a change in conditions of employment, or results in significant impairment of job tenure, employment security, or reasonably anticipated work opportunities is preferable to the exclusivity rule. The standard is flexible and allows balancing of the interests of the public employer and a labor organization and supports case law holding that the determination of whether the duty to bargain arises is to be decided case by case.

Justice BOYLE, dissenting, stated that work assignment is ordinarily a mandatory subject of bargaining, regardless of exclusivity, if the transfer is motivated by economic considerations such as wage rates or efficiency.

In adopting § 15 of the public employment relations act the Legislature intended that the MERC and the courts, in construing the duty to bargain in the public sector, should rely on federal precedent developed under § 8(d) of the National Labor Relations Act. Under federal law, the unilateral transfer of bargaining unit work, where motivated by economic considerations, is a mandatory subject of bargaining. Where the assignment of a particular duty has become a term or condition of employment, an employer must bargain about its reassignment. In this case, federal precedent is relevant and persuasive, and the MERC has not articulated a basis for declining to follow it. However, given the MERC's expertise, and its primary role in administering the PERA, the case should be remanded to the

MERC for further proceedings, looking to federal private sector decisions for guidance, rather than construing the rule in a manner that is clearly unwarranted.

162 Mich App 729; 413 NW2d 489 (1987) reversed.

1. LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — EXCLUSIVITY RULE.

Before a bargaining unit may lay sole claim to a particular work assignment by a public employer, the unit must establish that the work was performed exclusively by its unit members; if the work has not been assigned exclusively to one unit, there is no obligation on the part of the employer to bargain before shifting duties among the employees (MCL 423.201 *et seq.*; MSA 17.455[1] *et seq.*).

2. LABOR RELATIONS — EMPLOYMENT RELATIONS COMMISSION — AGENCY RULES.

Absence of published precedent as reinforcement for a long-established Employment Relations Commission rule does not deprive that rule of relevance.

*Frank A. Guido* for the appellee.

*Keller, Thoma, Schwarze, Schwarze, DuBay & Katz, P.C.* (by *Dennis B. DuBay* and *Gary P. King*), and *Susan P. Ward,* Assistant City Attorney, for the appellant.

Amici Curiae:

*Gallon, Kalniz & Iorio* (by *Bernard Feldman* and *Gail McCullers*) for Detroit Police Lieutenants & Sergeants Association and Flint Police Officers Association.

*Hiller, Hoekenga & Amberg* (by *Daniel J. Hoekenga* and *Joseph H. Firestone*) for Michigan Education Association/NEA.

*Riley & Roumell* (by *Stanley C. Moore, III,* and *Amy E. Newberg*) for Michigan Municipal League.

GRIFFIN, J. In this case, the issue is whether the

Michigan Employment Relations Commission used the appropriate standard in determining that the City of Southfield, a public employer, had not committed an unfair labor practice under the Michigan public employment relations act.[1] The charge was filed against the city after it unilaterally transferred certain job duties, previously performed interchangeably by several bargaining units, to one of these groups. Because the transferred work had not been performed exclusively by the bargaining unit represented by the objecting labor organization, the MERC found no violation of the duty to bargain. We conclude, for reasons set forth below, that the MERC did not err, and we reverse the decision of the Court of Appeals.

I

In connection with its law enforcement activities, the City of Southfield operates an auto pound which, in the past, had been staffed interchangeably by police officers, command officers, and civilian employees. The city also has a crime prevention program which had been staffed by both police officers and civilian safety technicians. When the city found it necessary, because of concerns about crime, to put more police on the street, the police officers in those two sections were reassigned to street duty, and their jobs in crime prevention and the auto pound were assumed by the civilian employees.

Thereafter, the Southfield Police Officers Association, a labor organization representing police officers and police officer specialists employed by the city, filed an unfair labor practice charge with the MERC. The association complained that the city had violated the PERA by refusing to bargain con-

[1] MCL 423.201 et seq.; MSA 17.455(1) et seq.

cerning its decision to transfer bargaining unit work in crime prevention and the auto pound to civilian employees who are members of a different bargaining unit and are represented by a different union.

Following a hearing, the hearing referee issued a decision in which he recommended dismissal of the unfair labor practice charge because the association had not established that the work transferred had been exclusively performed in the past by the association's members. The hearing referee based his decision on reasoning set forth in an unpublished opinion of the Court of Appeals, *Detroit Police Lieutenants & Sergeants Ass'n v Detroit,* decided February 22, 1982 (Docket No. 52931). Thereafter, the hearing referee's decision was affirmed by the MERC, which explained:

> Charging Party argues that the Commission is not bound to follow an unpublished Court of Appeals decision, and that the [hearing referee] erred in requiring Charging Party to show that the auto pound work and crime prevention work was performed exclusively by its members. We agree with Charging Party that an unpublished opinion of the Court of Appeals is not binding beyond that case. However, since the *Detroit Lieutenants and Sergeants,* we have applied the "exclusivity" rule to cases where unilateral transfer of bargaining unit work has been alleged because the rationale of the Court in that case was sound. Where particular job functions have been assigned interchangeably to both represented and nonrepresented employees, or to members of different units, and the unions involved have had an opportunity to demand bargaining over these assignments in the past, the mere fact that an employer assigns more of the work to one of these groups should not give rise to a bargaining obligation. See *City of East Detroit [v Police Officers Ass'n],* 1982 MERC Lab Op 1442,

1450; *City of Dearborn* [*v Alcamo*], 1984 MERC
Lab Op 78, 81.

On appeal, the association challenged the "exclusivity rule" followed by the MERC. The Court of Appeals concluded that in the absence of "any published opinions rendered by this Court or by our Supreme Court construing PERA that would govern the association's contention," the exclusivity rule had "no basis in law." *Southfield Police Officers Ass'n v Southfield,* 162 Mich App 729, 732-733; 413 NW2d 489 (1987). Refusing to apply the "exclusivity rule," the Court of Appeals panel then substituted the so-called "adverse impact" rule formulated by the National Labor Relations Board and set forth in *Westinghouse Electric Corp,* 150 NLRB 1574, 1577; 58 LRRM 1257 (1965), and *AMCAR Div, ACF Industries, Inc v NLRB,* 596 F2d 1344, 1349 (CA 8, 1979). In its opinion, the Court of Appeals stated:

> The dispositive question is not whether the work was performed exclusively by union employees in the past, but rather whether the employer's proposed reassignment would be inconsistent with previously established operating practices, would effect a change in conditions of employment, or result in a significant impairment of job tenure, employment security or reasonably anticipated work opportunities for those in the bargaining unit. This standard is certainly more favorable to the interests of the employees than that applied by MERC in the instant case. Given our Court's avowed adherence to the principle that PERA should be construed more liberally than the National Labor Relations Act, it would be anomalous for us to uphold MERC's exclusivity rule. We conclude that a proper disposition of this case requires remand for further conclusions of law and, if necessary, further findings of fact consistent with the test applied in *AMCAR.* [*Id.* at 734.]

This Court then granted the city's application for leave to appeal. 430 Mich 859 (1988).

II

Findings by the MERC with respect to questions of fact are conclusive if supported by competent, material, and substantial evidence on the record considered as a whole. Const 1963, art 6, § 28, MCL 423.216(e); MSA 17.455(16)(e). However, as we recognized in *U of M Regents v Employment Relations Comm,* 389 Mich 96, 102; 204 NW2d 218 (1973), this Court may review the law regardless of the factual findings of the commission. The Administrative Procedures Act, 1969 PA 306, MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.* provides in pertinent part:

> Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:
> (a) In violation of the constitution or a statute. [MCL 24.306(1)(a); MSA 3.560(206)(1)(a).]

Judicial review includes the determination of whether a decision of the MERC is "authorized by law," Const 1963, art 6, § 28, and such a decision may be set aside on appeal if based on a "substantial and material error of law." MCL 24.306(1)(f); MSA 3.560(206)(1)(f).

In the instant case, the Court of Appeals determined that the MERC's use of the exclusivity rule was, in effect, an "error of law." We disagree.

Although this Court has observed that an unpublished opinion of the Court of Appeals is of no precedential value, see *Stine v Continental Casu-*

*alty Co,* 419 Mich 89, 95, n 2; 349 NW2d 127 (1984), it does not necessarily follow that the absence of published precedent as reinforcement for a long-established MERC rule deprives that rule of any relevance. In *AFSCME v Wayne Co,* 152 Mich App 87, 98; 393 NW2d 889 (1986), lv den 426 Mich 875 (1986), the Court of Appeals recognized that

> [i]t is impossible to promulgate specific administrative rules in anticipation of every conceivable situation prior to the enforcement of a statute. *Thompson v Dep't of Corrections,* 143 Mich App 29, 32-33; 371 NW2d 472 (1985), conflicts order den 422 Mich 1238 (1985). An administrative agency may thus announce new principles of law through adjudicative proceedings in addition to doing so through its rule-making powers. *DAIIE v Comm'r of Ins,* 119 Mich App 113, 117; 326 NW2d 444 (1982), lv den 417 Mich 1077 (1983). The effective administration of a statute by an administrative agency cannot always be accomplished through application of predetermined general rules. Rather, some principles of interpretation must evolve in response to actual cases in controversy presented to the agency. An administrative agency must therefore have the authority to act either by general rule or by individual order.

For over ten years, the MERC has applied the exclusivity rule as a screening device in identifying those situations in which a duty to bargain may or may not arise out of the transfer of bargaining unit work. We cannot conveniently dismiss this longstanding interpretation of the PERA by the MERC as an "error of law" merely because no appellate court in this jurisdiction thus far has spoken publicly on the issue. This Court has traditionally accorded deference to the agency interpretation of a statute:

It is well settled that the construction placed upon statutory provisions by any particular department of government for a long period of time, although not binding upon the courts, should be given considerable weight. [*Allen v Detroit Police Dep't Trial Bd,* 309 Mich 382, 386; 15 NW2d 676 (1944). See also *Breuhan v Plymouth-Canton Community Schools,* 425 Mich 278, 282-283; 389 NW2d 85 (1986).]

Thus, we shall independently review the exclusivity rule on its merits and in light of its history to determine whether the MERC erred in its application of the rule to the circumstances of this case.

III

Under § 9 of the PERA, MCL 423.209; MSA 17.455(9), public employees enjoy the right to organize and engage in collective bargaining. Section 15 of the PERA[2] requires a public employer to bargain collectively with the recognized representatives of its public employees. Certain issues including "wages, hours and other terms and conditions of employment" are considered to be mandatory subjects of collective bargaining. MCL 423.215; MSA 17.455(15); *Detroit Police Officers*

[2] Section 15 of the PERA, MCL 423.215; MSA 17.455(15) provides:

A public employer shall bargain collectively with the representatives of its employees as defined in section 11 and is authorized to make and enter into collective bargaining agreements with such representatives. For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract, ordinance or resolution incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession.

*Ass'n v Detroit,* 391 Mich 44, 54-55; 214 NW2d 803
(1974); *Local 1277, Metropolitan Council No 23,
AFSCME v Center Line,* 414 Mich 642, 652; 327
NW2d 822 (1982). Issues falling outside of this
category are classified as either permissive or ille-
gal subjects of bargaining. *Id.* at 652. The classifi-
cation of a particular issue as a mandatory or
permissive subject "plays a vital role in the bar-
gaining dynamics of the public sector." *Id.* at 653.
Unilateral action on the part of a public employer,
or its refusal to engage in collective bargaining
with respect to a mandatory subject, may consti-
tute an unfair labor practice under § 10(1)(e) of the
PERA. MCL 423.210(1)(e); MSA 17.455(10)(1)(e).

The determination of what constitutes a manda-
tory subject of bargaining under the PERA is to be
decided case by case. *Local 1277, supra,* p 659; *Bay
City Ed Ass'n v Bay City Public Schools,* 430 Mich
370, 376; 422 NW2d 504 (1988); *Detroit Police
Officers Ass'n v Detroit,* 61 Mich App 487, 490-491;
233 NW2d 49 (1975), lv den 395 Mich 756 (1975).

The Michigan courts have held, in varying con-
texts, that the duty to bargain extends to a public
employer's diversion of unit work to nonunit em-
ployees or to the subcontracting of the unit work
to independent contractors. See, e.g., *Detroit Police
Officers Ass'n v Detroit,* 428 Mich 79; 404 NW2d
595 (1987) (the city violated its duty to bargain
over its decision to subcontract court security
work); *Plymouth Fire Fighters Ass'n, Local 1811 v
Plymouth,* 156 Mich App 220; 401 NW2d 281
(1986) (the city committed an unfair labor practice
in subcontracting work which had been performed
by union members); *Lansing Fire Fighters Union,
Local 421 v Lansing,* 133 Mich App 56; 349 NW2d
253 (1984) (the city violated its duty to bargain
about its decision to remove work done by unit
members and hire nonmembers to perform the

work); *Van Buren Public School Dist v Wayne Circuit Judge,* 61 Mich App 6; 232 NW2d 278 (1975) (the school district's decision to replace its bus drivers with a private transportation firm is a mandatory subject of bargaining); cf. *Bay City Ed Ass'n, supra* (the school district's decision to transfer operation of its special education program to an independent third party, an intermediate school district, was not subject to a duty to bargain); *United Teachers of Flint v Flint School Dist,* 158 Mich App 138; 404 NW2d 637 (1986) (there was no duty to bargain over a decision to eliminate teaching positions pursuant to a reorganization); *Ishpeming Supervisory Employees' Chapter of Local 128 v Ishpeming,* 155 Mich App 501; 400 NW2d 661 (1986) (there was no duty to bargain over a decision to transfer work pursuant to a reorganization effort).

However, in instances where job functions have been historically assigned interchangeably to both unit and nonunit employees, the MERC has held that the mere fact that the employer assigns more of the work to one of these groups does not violate the PERA or give rise to a bargaining obligation. This "exclusivity rule" originated in *Fenton Area Public Schools v Council 29, AFSCME,* 1976 MERC Lab Op 632, in which the employer unilaterally replaced unionized instructional aides with nonunion students. The MERC dismissed the union's unfair labor practice charge upon the basis of its finding that the work in question had not been exclusively performed by the instructional aides.

Subsequently, in *Southfield v Police Officers Ass'n,* 1980 MERC Lab Op 110, the police officers' union alleged that the function of guarding prisoners had been improperly transferred to personnel outside of the bargaining unit. The MERC dismissed the charge, noting that the "jailer's work" had

been performed by a mixed group of deputized and civilian personnel within the police department. *Id.* at 113.

In *Detroit Police Dep't v Detroit Police Lieutenants & Sergeants Ass'n,* 1980 MERC Lab Op 663, the MERC reconsidered and seemingly abandoned the exclusivity rule. The case involved the transfer of over fifty percent of the investigative work from members of the Detroit Police Lieutenants and Sergeants Association to patrolmen outside the bargaining unit. The MERC affirmed the hearing referee's finding of an unfair labor practice:

> The earlier *de minimus* [sic] presence of patrolmen in the investigative function of the IOS [Investigative Operative Section] does not constitute a justification for the continued wholesale erosion of bargaining unit work traditionally performed by members of Charging Party. [*Id.* at 665.]

But the Court of Appeals reversed in an unpublished opinion per curiam and remanded the case with direction that the MERC consider the exclusivity rule:

> In the instant case, the MERC opinion cited only the fact that the number of patrolmen in the IOS [Investigative Operations Section] had risen from 3.5 percent in 1974 to 57 per cent in 1979, in support of its finding that "the investigative work of the IOS division has been the traditional province of sergeants and lieutenants." These facts are not sufficient to support the critical finding that investigative work is exclusively DPLSA bargaining unit work.
>
> Further, the record indicates that the DPLSA submitted the question of whether investigative work should be the exclusive province of the DPLSA to [1969 PA] 312 arbitration in 1977-1978 . . . [d]espite the recognition that the Act

312 arbitrator had in essence found that investigative work was not the exclusive province of the DPLSA, the hearing referee premised the remainder of his decision on the question whether "the unilateral assignment of *bargaining unit work* of employees represented by one union" to members of another union is an unfair labor practice. Thus, the hearing referee also made a finding that such work is bargaining unit work without a "concise and explicit statement of the underlying facts supporting" that finding. MCL 24.285; MSA 3.560(185).

It is axiomatic that the crux of this entire case is whether investigative work is DPLSA bargaining unit work. If it is, then the city could not unilaterally reassign such work to patrol officers who are not members of the DPLSA bargaining unit. If it isn't bargaining unit work, then the city need not bargain at all on the question. Thus, adequate findings of fact on this question are critical. [*Detroit Police Lieutenants & Sergeants Ass'n, supra.*]

The MERC has subsequently reaffirmed and repeatedly applied the exclusivity rule "to cases where unilateral transfer of bargaining unit work has been alleged because the rationale of the Court in [*Detroit Police Lieutenants & Sergeants Ass'n*] was sound." *Southfield v Southfield Police Officers Ass'n,* 1985 MERC Lab Op 1025, 1029. See, e.g., *St Joseph Co v Police Officers Ass'n,* 1988 MERC Lab Op 524; *Livonia v Police Officers Ass'n,* 1986 MERC Lab Op 948; *Richmond Community Schools v MEA/NEA Local 1,* 1986 MERC Lab Op 850; *Grand Rapids Public Schools v Ed Ass'n,* 1986 MERC Lab Op 560; *Ludington Area Schools v Ed Ass'n,* 1986 MERC Lab Op 502; *Sheriff of Iosco Co v Police Officers Ass'n,* 1986 MERC Lab Op 443; *Flint School Dist v United Teachers of Flint,* 1985 MERC Lab Op 1071; *Southfield v Southfield Police Officers Ass'n, supra; Livonia Public Schools v Ed*

*Ass'n,* 1985 MERC Lab Op 550; *Schoolcraft Community College v Ass'n of Office Personnel,* 1985 MERC Lab Op 253; *Dearborn v Alcamo,* 1984 MERC Lab Op 78; *East Detroit v Police Officers Ass'n,* 1982 MERC Lab Op 1442; *Southfield v Police Officers Ass'n,* 1980 MERC Lab Op 110; *Fenton Area Public Schools v Council 29,* 1976 MERC Lab Op 632.

The opinion of the Court of Appeals in the instant case acknowledges that "the exclusivity rule finds support in decisions of MERC." 162 Mich App 734, n 1. Nevertheless, in the absence of any published Michigan appellate court opinion approving the exclusivity rule, the panel rejected the MERC's position as having "no basis in law," and turned instead to federal decisions interpreting the analogous provisions of the National Labor Relations Act as "persuasive authority" in resolving the issue at hand. *Id.* at 732-733. The panel chose to follow the "adverse impact" test set forth in *Westinghouse Electric Corp, supra.* There, the NLRB, in dismissing a complaint with respect to unilateral subcontracting, announced the following standard:

> [W]here the Board has found unilateral contracting out of unit work to be violative of Section 8(a)(5) and (1), it has invariably appeared that the contracting out involved a departure from previously established operating practices, effected a change in conditions of employment, or resulted in a significant impairment of job tenure, employment security, or reasonably anticipated work opportunities for those in the bargaining unit. [150 NLRB at 1576. See also *AMCAR, supra; Olinkraft, Inc v NLRB,* 666 F2d 302 (CA 5, 1982).]

The "adverse impact" test is but one of several

tests developed by the federal courts in determining whether the diversion of unit work is a mandatory subject of bargaining. In *Fibreboard Paper Products Corp v NLRB,* 379 US 203, 215; 85 S Ct 398; 13 L Ed 2d 233 (1964), the Supreme Court held that an employer's unilateral decision to contract out maintenance work previously performed by union members was a mandatory subject of bargaining. The Court emphasized that its holding was limited to the particular facts before it.

In *First Nat'l Maintenance Corp v NLRB,* 452 US 666, 679; 101 S Ct 2573; 69 L Ed 2d 318 (1981), the Court held that an employer's decision to shut down part of a business solely for economic reasons would require bargaining only "if the benefit, for labor-management relations and the collective-bargaining process, outweighs the burden placed on the conduct of the business." The Court cautioned that it expressed no view as to other types of management decisions. *Id.* at 686, n 22. Thus, the Court once again narrowly limited its holding.

In *Otis Elevator Co,* 269 NLRB 891; 115 LRRM 1281 (1984), the board relied on the analysis of Justice Stewart's concurrence in *Fibreboard, supra* at 223, wherein he reasoned that "management decisions which are fundamental to the basic direction of a corporate enterprise or which impinge only indirectly upon employment security" were beyond the scope of the duty to bargain. Applying this rationale to a plant-closure situation, the NLRB in *Otis,* held that "the critical factor to a determination of whether the decision is subject to mandatory bargaining is the essence of the decision itself, i.e., whether it turns upon a change in the nature or direction of the business or turns upon labor costs; *not* its effect on employees nor a union's

ability to offer alternatives." 269 NLRB 892 (emphasis in original).[3]

This Court has had occasion to review the federal tests, including *Fibreboard, First Nat'l,* and *Otis,* and we have noted that the holdings of those cases were strictly limited to their facts. See *Bay City, supra* at 380; *Local 1277, supra* at 658-659; *Detroit Police Officers Ass'n, supra* at 98-99, n 9. It is evident that no single test covers the whole spectrum of management decisions involving the transfer or diversion of unit work. Thus, federal precedent regarding private sector labor law, while "helpful," is not "controlling." *Detroit Police Officers Ass'n, supra* at 92. Federal precedent is relevant and persuasive only to the extent it is based on similar facts and circumstances and best effectuates the policy of the PERA. *Detroit Fire Fighters Ass'n v Detroit,* 408 Mich 663; 293 NW2d 278 (1980).

In the instant case, the tests formulated by the federal courts and the NLRB to determine whether there exists a duty to bargain over the diversion of bargaining unit work in the private sector are inappropriate for use in the present context. A common thread which runs through all of the federal analyses is the underlying assumption that the disputed work which is being diverted away in one way or another from the bargaining unit is, in fact, bargaining unit work. *Westinghouse,* for example, involved subcontracting of what was conceded to be bargaining unit work. Similarly, in *AMCAR,* the "adverse impact" test was applied

---

[3] See also *Local 2179, United Steelworkers of America v NLRB,* 822 F2d 559 (CA 5, 1987); *Plymouth Stamping Div, Eltec Corp,* 286 NLRB No 85; 127 LRRM 1021 (November 19, 1987); *Litton Microwave Cooking Products Div,* 283 NLRB 973; 125 LRRM 1081 (1987); *Hawthorn Mellody, Inc,* 275 NLRB 339; 119 LRRM 1079 (1985); *GarWood-Detroit Truck Equip Co,* 274 NLRB 113; 118 LRRM 1417 (1985); *Columbia City Freight Lines, Inc,* 271 NLRB 12; 116 LRRM 1311 (1984).

only to those duties which had earlier been found by the NLRB to be unit work.

The instant case, by contrast, involves a more basic question. Here, the disputed work had been interchangeably performed by more than one bargaining unit, thereby raising a real question as to whether the transferred duties are in fact "bargaining unit work." This factual difference is critical.

It seems elementary that a prerequisite to any determination concerning a duty to bargain about the transfer of work is a finding that the work is "bargaining unit work." The exclusivity rule developed by the MERC recognizes that before a bargaining unit may lay sole claim to a particular work assignment, the unit must establish that the work was performed exclusively by its unit members. If the work has not been assigned exclusively to one unit, then there is no obligation on the part of the employer to bargain before shifting duties among the employees to which the work has been assigned. The exclusivity rule represents the logical first step in a duty-to-bargain analysis.

The exclusivity rule is a reasoned interpretation of the PERA and a sensible solution to what otherwise would be, for the employer, an insoluble "Catch-22" situation. The exclusivity requirement goes to the very heart of the parties' bargain. It reinforces the bargaining process by recognizing that in the absence of a negotiated agreement which requires that work will be performed exclusively by one unit, employers and employee representatives have, in effect, agreed that the employer is free to assign work. Very significant are the ramifications for the public employer if the exclusivity rule were not given credence. In such an event, the public employer's transfer of nonexclusive work would always be subject to challenge by

whichever unit loses the work. In the present case, for example, public safety technicians, police officers, and command officers all may have a claim to the disputed work. It is not unrealistic to expect that the employer would become snared in inter-union rivalries.

The potential for perpetual conflict between competing bargaining units also raises the specter of long delays and escalating public expense caused by impasse-resolution procedures that are peculiar to the PERA. Unlike the NLRA, a public employer under the state statute is not free to implement its final offer after bargaining parties reach an impasse. The public employer must first engage in, and exhaust, either arbitration or a fact-finding procedure established by 1969 PA 312, MCL 423.231 *et seq.*; MSA 17.455(31) *et seq., MCL* 423.25; MSA 17.454(27). Additionally, § 13 of Act 312, MCL 423.243; MSA 17.455(43), specifically requires the public employer to maintain the status quo pending the Act 312 arbitration process.

In the present context, the public employer would be required to refrain from transferring work assignments between two units which have both previously performed the work until after the completion of the Act 312 process. The public employer's hands would be tied with regard to simple work assignments. Since, as in the instant case, several bargaining units and different unions are involved, multiple arbitrations could be generated over the same work assignment.

Under the exclusivity rule, if particular work has been performed interchangeably by employees in several bargaining units, and the public employer has not been limited by the terms of a collective bargaining agreement, the public employer is able "to assign according to the expertise

required by the work . . . ." *Livonia, supra* at 951.
The MERC standard, unlike the federal "adverse
impact" rule, takes into account the significant
differences in the statutory schemes regarding the
resolution of disputes and provides for the efficient
allocation of scarce public resources by minimizing
time-consuming and expensive challenges to the
transfer of work where there has been an overlap
in the performance of job duties by a multiplicity
of bargaining units.

The association argues that the exclusivity rule
threatens the viability of the bargaining unit be-
cause the rule is at odds with another principle
followed by the MERC. The MERC has consistently
held that no violation of the duty to bargain will
be found if the work removed is de minimis in the
context of the unit's work load. See, e.g., *Luding-
ton Area Schools, supra; Grant Public Schools v
Grant Ed Ass'n,* 1983 MERC Lab Op 117; *Troy
(Police Dep't) v Troy Command Officers Ass'n,*
1982 MERC Lab Op 667. The association asserts
that the exclusivity rule, when applied in conjunc-
tion with the de minimis principle, allows an
employer to unilaterally remove a de minimis
portion of the work without violating the duty to
bargain and later remove the remainder of the
work on the basis of the justification that the
transferred work is no longer exclusively that of
the affected bargaining unit. In other words, object
too soon and the effect is de minimis; object too
late, and it is no longer exclusive bargaining work.
The appellee foresees extensive erosion of the
bargaining unit as a result of application of the
exclusivity rule.

However, as the city points out, the MERC has
held that a prior de minimis removal of unit work
does not transform once exclusive work into non-
exclusive work. In *Southfield v Police Officers*

*Ass'n,* 1985 MERC Lab Op 904, 908, the commission held:

> The Employer also argues that it is relieved of the duty to bargain since work in the Property Room was not exclusive bargaining unit work. It is true that the Commission has found that when the disputed work is not exclusive bargaining unit work there is no bargaining obligation should the Employer shift duties to nonunit employees. *City of Dearborn,* 1984 MERC Lab Op 78; *City of East Detroit,* 1982 MERC Lab Op 1442. However, as far as this record reveals, the Property Room position has been exclusive bargaining unit work for at least the last six or seven years. The fact that the PST [Public Safety Technician] received occasional minimal assistance from her supervisor or a CETA worker does not change this fact.

As the MERC pointed out in the instant case:

> The mere fact that a job has been assigned to a member of another bargaining [unit] sometime in the past does not mean that the work is not bargaining unit work, as we held in *St Joseph Public Schools [v St Joseph Ed Ass'n],* 1985 MERC Lab Op 454. Where the work has been assigned exclusively to a unit member for a substantial period of time, and there is no agreement that said assignment is temporary, the Employer has an obligation to bargain before transferring the work. [1985 MERC Lab Op 1030.]

Thus, any possibility that the exclusivity rule will be used as a tool by a public employer to whittle away the domain of a particular bargaining unit is tempered by the MERC's recognition that exclusivity is a flexible concept which must take into account the relationship of the affected bargaining units vis-à-vis the employer on a case-by-case basis.

IV

In the instant case, there is no dispute that public safety technicians and other civilian employees, as well as police officers, had been assigned interchangeably to the crime prevention bureau and the auto pound for a period of several years. The association does not dispute that police officers did not exclusively perform these assignments in the past. Given our affirmation of the exclusivity rule, we conclude that the MERC properly ruled under the present facts that the city's assignment of the nonexclusive work did not constitute an unfair labor practice.

For the above-stated reasons, we reverse the decision of the Court of Appeals and reinstate the decision of the MERC.

RILEY, C.J., and LEVIN and BRICKLEY, JJ., concurred with GRIFFIN, J.

CAVANAGH, J. (*dissenting*). In my view, the "adverse impact" standard of *AMCAR Div, ACF Industries, Inc v NLRB,* 596 F2d 1344, 1349 (CA 8, 1979), which the Court of Appeals adopted in this case, is preferable to the exclusivity rule. The standard is a flexible one and allows for a balancing of interests between the public employer and a labor organization and provides that the duty to bargain will arise only where an employer's action is inconsistent with past operating practices, effects a change in conditions of employment, or results in significant impairment of job tenure, employment security, or reasonably anticipated work opportunities. Furthermore, the standard supports the position frequently taken by this Court in the past that a determination of whether a duty to bargain arises will be decided on a case-

by-case basis. A rule of exclusivity per se does not support that principle and does not provide adequate protection of the collective bargaining rights of public employees.

Accordingly, I would affirm the decision of the Court of Appeals.

ARCHER, J., concurred with CAVANAGH, J.

BOYLE, J. (*dissenting*). In my view, the majority has misconstrued federal precedent and too broadly construed "the rule of exclusivity" applied by the MERC in this case. In view of the fact that the majority has cited no federal precedent in support of its conclusion and the MERC has provided no federal authority for its rule of exclusivity, I believe that a remand is necessary to assure that the MERC's test can in fact be harmonized with relevant federal authority. If the MERC remand does so, it may affirm its original dismissal. I would retain jurisdiction pending this clarification.

The broad issue in this case is whether the employer, City of Southfield, committed an unfair labor practice under § 10(1)(e) of the PERA, MCL 423.210(1)(e); MSA 17.455(10)(1)(e), by unilaterally transferring work from the Southfield Police Officer's Association's bargaining unit. However, this issue quickly devolves into whether the transfer of this work from the bargaining unit was a mandatory subject of bargaining under § 15 of the PERA. MCL 423.215; MSA 17.455(15). As the majority observes, unilateral action on the part of a public employer with respect to a mandatory subject of bargaining is deemed to be a refusal to bargain and hence an unfair labor practice under § 10(1)(e) of the PERA.

Thus, the issue is simply whether the PERA provision in question includes the transfer of bargaining unit work within the phrase "other terms

and conditions of employment."[1] Our own precedent establishes that § 15 of the PERA was adopted with the legislative intent that the MERC and the Michigan courts would rely on the legal precedents developed under the NLRA, § 8(d) in construing the duty to bargain in the public sector. My review of federal law indicates that the unilateral transfer of bargaining unit work, where motivated by economic considerations, is a mandatory subject of bargaining under the NLRA.

I cannot accept the majority's conclusion that this case should be resolved by construing the exclusivity rule as permitting dismissal of an unfair labor practice petition whenever the work in dispute has been interchangeably performed by more than one bargaining unit. I do not read the MERC opinion in this case, to require as a sine qua non that "the unit must establish that the work was performed exclusively by its unit members." *Ante,* p 185. Nor can I agree, absent contrary legislative indication, that the potential for conflict between competing bargaining units in the public sector, furnishes a sufficient reason to construe the exclusivity rule as does the majority. If the assignment of a particular duty has become a term or

[1] The full text of MCL 423.215; MSA 17.455(15) provides:

A public employer shall bargain collectively with the representatives of its employees as defined in section 11 and is authorized to make and enter into collective bargaining agreements with such representatives. For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract, ordinance or resolution incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession.

condition of employment, the employer must bargain about its reassignment.

I

A

The question before the Court, the proper construction of the PERA, § 15, is one of law. See Const 1963, art 6, § 28. It is the Court's duty to set aside any agency decision which is in violation of the constitution or a statute. MCL 24.306(1)(a); MSA 3.560(206)(1)(a).

This is not to say that an agency's interpretation of its enabling act is irrelevant. In explaining the role of a reviewing court under the comparable judicial review provision of the federal Administrative Procedures Act, 5 USC 706, the United States Supreme Court has written:

> Although not determinative, the construction of a statute by those charged with its administration is entitled to great deference, particularly when that interpretation has been followed consistently over a long period of time. See *Piper v Chris-Craft Industries, Inc,* 430 US 1 [97 S Ct 926; 51 L Ed 2d 124] (1977). [*United States v Clark,* 454 US 555, 565; 102 S Ct 805; 70 L Ed 2d 768 (1982).]

But the United States Supreme Court has also written:

> On the other hand, the "deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress." *American Ship Building Co v NLRB,* 380 US 300, 318 [85 S Ct 955; 13 L Ed 2d 855] (1965). Accordingly, while reviewing courts should uphold reasonable and defensible

constructions of an agency's enabling Act, *NLRB v Iron Workers,* [434 US 335, 350; 98 S Ct 651; 54 L Ed 2d 586 (1978)], they must not "rubber-stamp . . . administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *NLRB v Brown,* 380 US 278, 291-292 [85 S Ct 980; 13 L Ed 2d 839] (1965). See *Chemical & Alkali Workers v Pittsburgh Plate Glass Co,* 404 US 157, 166 [92 S Ct 383; 30 L Ed 2d 341] (1971). [*Bureau of Alcohol, Tobacco & Firearms v Federal Labor Relations Authority,* 464 US 89, 97-98; 104 S Ct 439; 78 L Ed 2d 195 (1983).][2]

Longstanding and well-reasoned administrative precedent should be accorded great deference. Isolated agency decisions and even those longstanding agency decisions unsupported by persuasive reasoning should be accorded less deference. In the end, it is *our* constitutional and statutory duty to construe enabling acts—to discern the legislative intent underlying them. See, generally, *U of M Regents v Employment Relations Comm,* 389 Mich 96, 102-103; 204 NW2d 218 (1973). However, an indispensable tool in the Court's fulfillment of that duty is a thoughtful and carefully reasoned agency decision. The task at hand is to discern the legisla-

---

[2] In 5 Davis, Administrative Law (2d ed), § 29:16, p 403, it is further explained that

[d]eference for an agency's interpretation of law is typically unmentioned in Supreme Court opinions in which the Court substitutes its interpretation for the agency's. Indeed, such deference seems to be absent whenever the Court disagrees with the agency's interpretation. "Deference" becomes a concept that is useful when the Court is in doubt about the interpretation but is satisfied to let the agency's decision stand.

Cases in which the Supreme Court substitutes judgment are quite numerous—far more numerous than deference cases. The Court substitutes judgment in some cases even when the question of interpretation involves policymaking within the agency's specialized area.

tive purpose underlying the PERA, § 15 and to give
effect to that purpose.

B

We have addressed the legislative intent under-
lying § 15 of the PERA in a number of previous
decisions.

In *Pontiac Police Officers Ass'n v Pontiac,* 397
Mich 674; 246 NW2d 831 (1976), we held that the
use of a civilian trial board in disciplinary proceed-
ings was a mandatory subject of bargaining. In the
lead opinion, Justice LEVIN explained:

> It may, indeed, be desirable, because of the
> unique "para-military" nature of police depart-
> ments, to guarantee some degree of civilian con-
> trol, insulated from the uncertainties of the collec-
> tive bargaining process.
>
> If the Legislature deems it appropriate to rede-
> fine the scope of the collective bargaining obliga-
> tion of the public employers generally or of partic-
> ular public employers and the representatives of
> their employees to include "wages, hours, and
> *some* other terms and conditions of employment,"
> it may do so.
>
> This Court cannot properly decide ad hoc that
> what has uniformly been regarded a "condition" of
> employment is not such a condition as applied to a
> particular public employer although it continues
> to be such a condition for other employers, public
> and private. By eschewing redefinition, we under-
> score the prerogative of the Legislature to give
> such consideration as it deems warranted to the
> claims of public employers that the scope of the
> collective bargaining obligation impinges unduly
> on their power to govern. [*Id.* at 684.]

In *Central Michigan Univ Faculty Ass'n v Cen-
tral Michigan Univ,* 404 Mich 268; 273 NW2d 21
(1978), a majority of the Court adopted and ex-

tended Justice LEVIN's broad reading of the phrase
"other terms and conditions of employment." In
holding that the elements, procedures and criteria
for faculty evaluation are mandatory subjects of
bargaining, the Court explained:

> The Legislature in adopting the very words of
> the NLRA chose to adopt the industrial model for
> public sector collective bargaining. In decreeing
> that "wages, hours, and other terms and condi-
> tions of employment" are mandatory subjects of
> collective bargaining, the Legislature focused on
> the effect a particular aspect of the employment
> relationship has on the employees' status, not the
> effect it has on the "business," i.e., the effect on
> educational policies. The statutory test of the PERA
> is whether the particular aspect of the employ-
> ment relationship is a "term or condition of em-
> ployment." *Under the act, a particular aspect of
> the employment relationship is a mandatory sub-
> ject of collective bargaining, even if it may be said
> to be only minimally a condition of employment.*
> [*Id.* at 279-280. Emphasis added.]

We have acknowledged from the inception of the
act that a broad construction of § 15 flows from the
very language employed by the Legislature:

> Section 15 of PERA undoubtedly was patterned
> after § 8(d) of the National Labor Relations Act
> (NLRA). Both statutes use almost identical language
> in describing the duty to bargain. The decision by
> the Michigan Legislature to adopt the language of
> § 8(d) of the NLRA is significant. Section 8(d) has
> been part of the NLRA since the Taft-Hartley
> amendments of 1947. The terms of § 8(d) have
> been litigated in numerous cases before the Na-
> tional Labor Relations Board (NLRB) and the Fed-
> eral courts. Although we cannot state with cer-
> tainty, it is probably safe to assume that the
> Michigan Legislature intentionally adopted § 15
> PERA in the form that it did with the expectation

that MERC and the Michigan courts would rely on the legal precedents developed under NLRA, § 8(d) to the extent that they apply to public sector bargaining. Edwards, *The emerging duty to bargain in the public sector,* 71 Mich L Rev 885, 895 (1973). [*Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 53; 214 NW2d 803 (1974). Accord *Local 1277, Metropolitan Council No 23, AFSCME v Center Line,* 414 Mich 642, 652-653; 327 NW2d 822 (1982); *Bay City Ed Ass'n v Bay City Public Schools,* 430 Mich 370, 375; 422 NW2d 504 (1988).]

We have also acknowledged that the scope of collective bargaining in the public sector may be limited by concerns about the effects of unionization on the political process. As explained in *Bay City Ed Ass'n,* 430 Mich 376:

[C]ertain subjects are within the scope of management prerogative, and the public employer, who remains politically accountable for such decisions, must not be severely restricted in its ability to function effectively.

Moreover, we have postulated that application of the PERA may be affected by fiscal crisis and resulting potentials unique to the public sector. See *Detroit Police Officers Ass'n v Detroit,* 428 Mich 79, 91; 404 NW2d 595 (1987) (lead opinion by BOYLE, J.). However, there is no assertion in this case that the staffing change was the product of fiscal crisis, nor can we assume that the staffing of the auto pound would severely restrict the policymaking role of those who remain politically accountable for the decision.

Absent any indication that this issue severely restricts policy making, or entails a fiscal crisis, and in view of our prior rulings that § 15 of the PERA was patterned after § 8(d) of the NLRA, I

believe that on remand the MERC should look to federal private sector decisions for guidance.[3]

## II

I agree with the majority that the *Fibreboard Paper Products Corp v NLRB,* 379 US 203; 85 S Ct 398; 13 L Ed 2d 233 (1964); *First Nat'l Maintenance Corp v NLRB,* 452 US 666; 101 S Ct 2573; 69 L Ed 2d 318 (1981), is inapplicable to the question presented here. This dispute does not involve subcontracting.

Properly reviewed under § 8(d) of the NLRA, this case would appear to fall within a line of authority involving three distinct, though interrelated categories of issues: (1) bargaining unit disputes, (2) jurisdictional disputes, and (3) work assignment disputes. On remand, the MERC should examine all three of these categories to place this dispute in its proper context.

Bargaining unit disputes arise in the context of collective bargaining when one party, typically the employer, attempts to negotiate the scope of the type of employees to be covered by the agreement.[4] As explained in *Newspaper Printing Corp v NLRB,* 625 F2d 956, 963 (CA 10, 1980):

---

[3] It is clear from a comparison of § 8(d) of the NLRA, that § 15 of the PERA was patterned after federal *private* sector labor relations law. Under federal *public* sector law, there is a specific management rights provision reserving work assignments, contracting out, and the assignment of personnel. See 5 USC 7106(a)(1)(B). But see also *United States Naval Ordinance Station, Louisville Kentucky v Federal Labor Relations Authority,* 818 F2d 545 (CA 6, 1987) (certain qualifications of employees are negotiable even though they might affect on work assignments). Cf. *United States Dep't of Health & Human Services v Federal Labor Relations Authority,* 844 F2d 1087 (CA 4, 1988) (the union's proposal to require the department to make contracting-out decisions in accordance with Office of Management and Budget guidelines was not negotiable).

[4] See, e.g., *Newport News Shipbuilding & Dry Dock Co v NLRB,* 602 F2d 73 (CA 4, 1979); *Newspaper Printing Corp v NLRB,* 625 F2d 956 (CA 10, 1980), cert den 450 US 911 (1981); *Westvaco Corp,* 289 NLRB No 45; 131 LRRM 1044 (June 22, 1988).

Insistence on a modification in the scope of the bargaining unit, whether established by Board certification or voluntary recognition, is an unfair labor practice in violation of § 8(a)(5) of the Act. *Newport News Shipbuilding & Dry Dock Co v NLRB,* 602 F2d 73, 76 [CA 4, 1979]; *Hess Oil & Chemical Corp v NLRB,* 415 F2d 440, 445 [CA 5, 1969], cert den 397 US 916; 90 S Ct 920; 25 L Ed 2d 97 [1970]; accord, *Douds v International Longshoremen's Association,* 241 F2d 278, 282-283 [CA 2, 1957]. The reason is that § 8(a)(5) makes it an unfair labor practice for an employer to refuse to bargain collectively with the representatives of his employees and § 9(a) obligates the employer to recognize the union as the exclusive representative of all the employees in the appropriate unit. *Newport News, supra* at 76. See also, *NLRB v Southland Cork Co,* 342 F2d 702, 706 [CA 4, 1965].

Accordingly, it has been said that "there [can] be no genuine bargaining as contemplated by the Statute until complete recognition [has] been granted as the Act requires," *McQuay-Norris Mfg Co v NLRB,* 116 F2d 748, 751 [CA 7, 1940], cert den 313 US 565; 61 S Ct 843; 85 L Ed 1524 [1941], and that "[t]he parties cannot bargain meaningfully about wages or hours or conditions of employment unless they know the unit of bargaining." *Douds, supra* at 282. Moreover it is equally well established that insistence to impasse upon a nonmandatory subject of bargaining violates § 8(a)(5). *NLRB v Wooster Division of Borg- Warner Corp,* [356 US 342, 349; 78 S Ct 718; 2 L Ed 2d 823 (1958)]. And the description or size of the bargaining unit is not a mandatory subject. See, e.g., *Newport News Shipbuilding & Dry Dock Co v NLRB, supra* at 76; *National Fresh Fruit & Vegetable Co v NLRB,* 565 F2d 1331, 1334 [CA 5, 1980].

It is important to note that, while the scope of the bargaining unit is not a mandatory subject of bargaining, neither is there a right of the employer to unilaterally implement changes in the

bargaining unit. Any attempt to do so constitutes an unfair labor practice, *Westvaco Corp, supra.*

A jurisdictional dispute is a controversy as to whether certain work should be performed by workers in one bargaining unit or another.[5] True jurisdictional disputes are limited to situations involving competing claims between *rival* groups of employees. See *NLRB v Plasterers' Local Union No 79*, 404 US 116, 134, n 30; 92 S Ct 360; 30 L Ed 2d 312 (1971). The United States Supreme Court has explained the operation of the NLRA in jurisdictional disputes as follows:

> While § 8(b)(4)(D) [29 USC 158(b)(4)(D)] makes it an unfair labor practice for a union to strike to get an employer to assign work to a particular group of employees rather than to another, the Act does not deal with the controversy anterior to a strike nor provide any machinery for resolving such a dispute absent a strike. The Act and its remedies for "jurisdictional" controversies of that nature come into play only by a strike or a threat of a strike. Such conduct gives the Board authority under § 10(k) [29 USC 160(k)] to resolve the dispute. [*Carey v Westinghouse Corp,* 375 US 261, 263-264; 84 S Ct 401; 11 L Ed 2d 320 (1964).]

The § 10(k) dispute resolution mechanism substitutes for collective bargaining and requires the board to decide jurisdictional disputes on the merits.[6]

A work assignment dispute is also a controversy

---

[5] As the Court in *Carey v Westinghouse Corp,* 375 US 261, 266; 84 S Ct 401; 11 L Ed 2d 320 (1964), explained, another variety of "jurisdictional" dispute is one concerning which union should represent the employees. These are, perhaps, better characterized as "representational" disputes. See *Metromedia, Inc, KMBC-TV v NLRB,* 586 F2d 1182, 1189-1190 (CA 8, 1974).

[6] *NLRB v Radio & Television Broadcast Engineers Union, Local 1212, Int'l Brotherhood of Electrical Workers, AFL-CIO,* 364 US 573; 81 S Ct 330; 51 L Ed 2d 302 (1961). As the United States Supreme Court has explained, § 8(b)(4) of the NLRA in general is limited to

as to whether certain work should be performed by a bargaining unit. However, work assignment disputes do not involve a neutral employer victimized by rival unions. They instead arise as bilateral disputes between one bargaining unit and the employer. Work assignment disputes therefore do not trigger proceedings under § 10(k) of the NLRA. See *Kaynard for and on Behalf of the NLRB v Transport Workers Union of America, AFL-CIO,* 306 F Supp 344, 347 (ED NY, 1969).[7] As explained in *Kaynard,* 306 F Supp 347:

> This is not to say that the presence of two unions is essential to the characterization of a dispute as jurisdictional under the statute. So, for example, the NLRB has termed jurisdictional a union demand for jobs which have been and are held by a group of employees belonging to no labor organization. See, e.g., *International Brotherhood of Electrical Workers, AFL-CIO and its Local 639,* 138 NLRB 689 (1962); *International Longshoremen's Association, AFL-CIO, Local 1248,* 151 NLRB 312, 317 (1965). And statutory protection has been afforded the perambulating employer whose transfers of its own non-union employees to changing construction sites creates problems as these men enter spheres of influence staked out by unions whose members have not theretofore held the specific jobs. See, e.g., *International Brotherhood of Electrical Workers, AFL-CIO, Local Union No 453,* 158 NLRB 426 (1966) (jobs on new construction site); *Local 87, International Association of Heat and Frost Insulators and Asbestos Workers, AFL-CIO,* 163 NLRB [899] (1967) (same). These

protecting employers in the position of neutrals. *Nat'l Woodwork Mfgrs Ass'n v NLRB,* 386 US 612, 625; 87 S Ct 1250; 18 L Ed 2d 357 (1967).

[7] See also *Cuneo v Local 472, Int'l Hod Carriers' Bldg & Common Laborers' Union of America, AFL-CIO,* 175 F Supp 131, 137 (D NJ, 1959).

are cases where a union seeks to obtain jobs its members have not held.

The statutory language may not be extended to cover traditional forms of economic disputes between an employer and union attempting to retain specific jobs historically held by particular employees.

Application of federal work assignment dispute principles is somewhat clouded because federal bargaining unit certifications are frequently defined by job or craft descriptions. Disputes in federal practice therefore arise when an employer insists to impasse regarding an issue that it believes to be a work assignment issue and the union believes to be a bargaining unit dispute.[8] Analysis of work assignment disputes under federal law is further clouded by the frequent practice of federal courts in referring to work assignment disputes as "jurisdictional," even when there are no competing claims of rival unions and it is clear that the dispute is merely between *a* union and the employer.[9] Nevertheless, what appears to have emerged as the general and uniform rule of the circuits is that work assignments are *mandatory* subjects of bargaining.[10] Although the question has not yet reached the circuits, the board has further refined this rule by explaining that the transfer of bargaining unit work to nonunit employees is a mandatory subject of bargaining *if* the transfer is motivated by economic considerations such as

[8] See, e.g., *The Idaho Statesman v NLRB,* 267 US App DC 48; 836 F2d 1396 (1988); *Newspaper Printing Corp v NLRB,* 692 F2d 615 (CA 6, 1982); *The Boeing Co v NLRB,* 581 F2d 793 (CA 9, 1978); *University of Chicago v NLRB,* 514 F2d 942 (CA 7, 1975).

[9] See, e.g., *The Idaho Statesman,* n 8 *supra.*

[10] Indeed, the rule cuts across all ideological lines. Compare *The Idaho Statesman,* n 8 *supra* (opinion by D. H. Ginsburg, J.), with *University of Chicago* (opinion by Clark, J.).

wage rates or efficiency.[11] No other exceptions exist to the federal rule that a work assignment dispute is a mandatory subject of bargaining.

I conclude that federal precedent is relevant and persuasive, directly contrary to the rule expressed by the majority, and that the MERC has not articulated a basis to decline to follow federal precedent.

III

While I do not believe it is necessary to endorse the Court of Appeals view that the PERA should be construed more liberally than federal precedent, I of course do not believe that it is appropriate to resolve the remand under federal precedent alone. As the majority has emphasized, there are a number of previous decisions by the MERC in this area. I agree that the consistency and duration of the MERC's adherence to the rule of exclusivity is a significant consideration. I do not believe that it is the sole consideration. Given that the MERC rule deviates from federal precedent upon which the Legislature intended that we rely, I believe that overriding significance should be accorded the reasoning and policy discussions supporting the MERC rule. Unfortunately none has been provided.

The MERC opinion refers to the "sound" rationale of the Court of Appeals in *Detroit Police & Sergeants Ass'n,* unpublished opinion per curiam, decided February 22, 1982 (Docket No. 52931). It is indisputable that unpublished opinions of the Court of Appeals have no precedential value. MCR 7.215(C)(1). Moreover, this unpublished opinion states no rationale for the rule of exclusivity. Indeed, it is not even clear that the Court of

[11] See, e.g., *Connecticut Color, Inc,* 288 NLRB No 81; 128 LRRM 1211 (April 28, 1988); *Kohler Co,* 292 NLRB No 70; 131 LRRM 1172 (January 27, 1989).

Appeals adopted a rule of exclusivity in *Detroit Police & Sergeants Ass'n,* because the Court of Appeals remanded the matter to the MERC for a determination of whether the work was "bargaining unit work," despite recognizing that the investigative work in question was not the exclusive province of the union.

### IV

Finally, we are left with the majority's own rationale for the rule of exclusivity. Initially, the majority reasons:

> The exclusivity rule is a reasoned interpretation of the PERA and a sensible solution to what otherwise would be, for the employer, an insoluble "Catch-22" situation. The exclusivity requirement goes to the very heart of the parties' bargain. It reinforces the bargaining process by recognizing that in the absence of a negotiated agreement which requires that work will be performed exclusively by one unit, employers and employee representatives have, in effect, agreed that the employer is free to assign work. Very significant are the ramifications for the public employer if the exclusivity rule were not given credence. In such an event, the public employer's transfer of nonexclusive work would always be subject to challenge by whichever unit loses the work. In the present case, for example, public safety technicians, police officers, and command officers all may have a claim to the disputed work. It is not unrealistic to expect that the employer would become snared in interunion rivalries. [*Ante,* pp 185-186.]

Even if I assume arguendo that this is a jurisdictional dispute between rival labor unions, I could not agree with a construction that would resolve the dispute by leaving the question of work assignment in the sole discretion of the employer. If the

potential for conflicting demands is to preclude an issue from the category of mandatory subjects of bargaining, very little is left for the bargaining table. The required process under Act 312 anticipates disputes of this character, and the statute provides for intervention in the arbitration process. MCL 423.236; MSA 17.455(36).

I would not conclude that the Legislature did not intend to make this a controlling consideration in categorizing bargaining issues as mandatory or permissive, nor am I able to conclude without further clarification from the MERC that the exclusivity rule is being applied to establish an irrebuttable presumption that what would otherwise apparently constitute a mandatory subject of bargaining under federal law is not an unfair labor practice under the PERA.

The majority *is* correct in asserting that a sweeping categorization of this issue as a permissive subject of bargaining will preserve public resources and minimize "time-consuming and expensive challenges" to management decisions under Act 312. However, this is an argument for categorizing *all* bargaining issues as permissive subjects of bargaining—an argument that the Legislature has expressly rejected. Section 1 of Act 312 declares:

> It is the public policy of this state that in public police and fire departments, where the right of employees to strike is by law prohibited, it is requisite to the high morale of such employees and the efficient operation of such departments to afford an alternate, expeditious, effective and binding procedure for the resolution of disputes, and to that end the provisions of this act, providing for compulsory arbitration, shall be liberally construed. [MCL 423.231; MSA 17.455(31).]

I therefore find no support for the MERC rule of exclusivity in the rationale of the majority.

V

Assuming that the rule of exclusivity is viable, the MERC's application of the rule in this case does not support the broad brush construction that the majority adopts. While I acknowledge that the decision of the hearing referee in this case and other MERC opinions may be construed as the majority suggests, what the MERC actually and carefully said in regard to this claim was:

> [T]he mere fact that an employer assigns more of the work to one of [interchangeable units] should not give rise to a bargaining obligation. . . . However, . . . where there is a substantial change in the nature of the work assigned outside the [bargaining] unit, a duty to bargain may arise.

The board also observed that there was no testimony as to what the officer in charge of the auto pound did and concluded:

> The mere fact that a job has been assigned to a member of another bargaining [unit] sometime in the past does not mean that the work is not bargaining unit work [citations omitted]. Where the work has been assigned exclusively to a unit member for a substantial period of time, and there is no agreement that said assignment is temporary, the Employer has an obligation to bargain before transferring the work.

The MERC then concluded that the charging party had not met its burden of proof.

Thus, the exclusivity rule as conceived by the MERC may be a method to determine functionally,

by resort to the parties operating practices, the question whether the job in question was bargaining unit work. Where there is no definition in the certification or contract by which the charging party could claim exclusivity, the unions involved have had an opportunity to demand bargaining over these assignments in the past, and the work has been performed interchangeably by members of different units, none of which has a legal claim to the work by unit description, the exclusivity rule may operate to interpret the parties practices in order to determine whether the assignment in fact was bargaining unit work as understood by the parties.

I am unwilling to conclude that the MERC has adopted a policy of slavishly applying the exclusivity rule to dismiss the legitimate charges of a refusal to bargain over work assignments. When a charging party has advanced evidence in support of these claims, the MERC can, and I believe would, act to uphold the integrity of the collective bargaining process. The majority's construction of the MERC's policy would create an irrebuttable presumption of law that unless all of the work at issue is performed exclusively by petitioner's members, the work is not bargaining unit work. Such a construction would excuse the board from the legal obligation to factually determine what is and is not bargaining unit work and under what circumstances a transfer is a mandatory subject of bargaining. The board's obligation to use its expertise to determine whether by custom or practice the relationship has created bargaining unit work, should not be so readily dismissed.

VI

CONCLUSION

Federal precedent in this area is relevant and

persuasive. Work assignment is a mandatory subject of bargaining regardless of "exclusivity," as the majority has interpreted it, if the transfer is motivated by economic considerations, such as wage rates or efficiency. However, given the MERC's expertise and its primary role in administering the PERA, I would remand this case, while retaining jurisdiction, rather than construe the rule, as has the majority, in a manner that, in my view, is unwarranted.